### RAINEY et al. v. POTTER.

(Circuit Court of Appeals, Second Circuit. January 8, 1903.)

#### No. 47.

1. CONTRACT—AGENCY TO EXECUTE—CHARTER OF VESSEL.

    Defendants were coal dealers having an office in New York, which was in charge of a clerk, who was authorized to charter vessels to be used in their business. After some conversation with the clerk, plaintiff's broker called on him at defendants' office, and presented a memorandum of charter for a vessel owned by plaintiff, purporting on its face to be made with defendants, which the clerk signed with his own name. *Held*, that under such circumstances, the authority of the clerk to execute charter for defendants being admitted, unless he made known to the broker or to plaintiff that he was not acting for defendants, they were bound by the charter, and liable for a failure to carry it out.

2. TRIAL—ORDER OF PROOF.

    Where a complaint alleged that a certain person was defendants' agent, and that defendants, through him, entered into the contract sued on, both of which allegations were denied, it is immaterial which one is proved first, and the admission of evidence of the agent's authority before the introduction of the contract was not error.

3. APPEAL—REVIEW—HARMLESS ERROR.

    Where there was no dispute as to the terms of the written contract sued on as proved, the admission of evidence of prior negotiations is harmless error.

4. SAME.

    The permitting of leading questions is largely discretionary, and they will not be held ground for reversal, where it is clear that they were not prejudicial.

In Error to the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon a writ of error to review a judgment of the Circuit Court, Southern District of ,New York, entered upon the verdict of a jury for $2,616.14 in favor of defendant in error, who was plaintiff below. The plaintiff, Potter, was the managing owner and agent of the schooner Jennie French Potter. Defendants, Rainey and Ellicott, were partners in the coal business in Philadelphia and New York. Their New York office was in the Bowling Green Building; the firm name, W. T. Rainey & Co., was on the door, and the office under the control of one Ernest M. Munn, who was their clerk in charge of the general affairs of the firm in New York. Concededly he had authority to charter vessels that were to be used in the firm's business. On May 4, 1900, after a conversation with Munn over the telephone, plaintiff's broker called at the New York office of the defendants, found him in charge, and presented to him a proposed contract or memorandum of charter, substantially in these words:

"Messrs. W. T. Rainey & Co.: We have this day chartered the Jennie French Potter to go to Newport News for Providence at $.65, Boston and Portsmouth $.75 or Portland at $.80 shipper's option; eight days to load, Sundays and holidays excepted, five cents per ton a day demurrage after this time expires until loaded."

It was thereupon signed by Munn with his own name, "E. M. Munn." He asserts that before doing so he struck out the words "Messrs. W. T. Rainey & Co.," wrote in their place the words "C, J. Wittenberg," and at the same time stated to plaintiff's broker "those [i. e., Wittenberg] are the people to whom you will apply for the coal, and who will load the vessel when she gets to Norfolk." The witnesses for plaintiff insist that he made no such statement, made no change in the document, but simply signed it as above and delivered it to plaintiff's broker, it being supposed by the broker and by plaintiff that Munn signed it as agent for defendants. The schooner was not given a cargo when she got to Newport News. Defendants insisted that they had not chartered her, and after some delay the contemplated voyage was abandoned. The action was to recover demurrage and damages.

The charge to the jury begins with this statement: "There is not any question in the case but that the defendants had this office here in New York for the transaction of business of this kind, nor but that Mr. Munn was the manager there for them in the transaction of such business, nor but what Mr. Cox represented the plaintiff in going there to make this arrangement; there is no question about that. There is no question but what they did make a bargain, and no question about the terms. The question is, with whom did the plaintiff, through Mr. Cox, make that bargain through Mr. Munn acting for somebody?" This statement of the single issue which was left in the case when the testimony was closed is entirely accurate, and upon that simple question there was a sharp conflict of testimony between the witnesses. The verdict has, of course, determined that issue in favor of the plaintiff.

Howard Taylor, for plaintiff in error.

John McG. Goodall, for defendant in error.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). Upon the close of the case defendants moved to direct a verdict in their favor upon the ground that the testimony showed an instrument made by Munn personally with the plaintiff, and not one purporting to be made by the defendants with the plaintiff. This was denied, and exception reserved. Defendants' counsel also noted an exception to the charge "so far as it says that Munn must have made known to Cox

that he was not acting for defendants," and asked the court to charge that, "the contract having been signed by Ernest M. Munn personally, the burden is upon the plaintiff to prove that it was not his personal contract, but that it was in fact the intention of the parties that the contract should be made by somebody else than the person who signed it." To this the court responded, "That is a circumstance; I have left it to the jury"—and the defendants again excepted.

The passage in the charge which is complained of reads:

"If Munn told Cox that the right name was not in the paper, that Wittenberg was the man, and not Rainey & Co., so that he understood it, then he did not have any bargain with the defendants; but if he did not, and left him to understand that the defendants were the ones, then the verdict should be for the plaintiff."

Counsel for defendants states that the general question of law presented is "whether, because the transaction took place on the defendants' premises, Munn's failure to make the owner clearly understand that it was not the defendants' matter made the defendants liable." But this statement is incomplete. Munn was not only the agent of the defendants in their office, but he was an agent fully empowered to enter into just such contracts as this for them. No witness, not even Munn himself, suggested that the contract was a personal one, that the minds of the parties ever met on a contract with Munn, or even contemplated such a contract. The document itself proclaimed to every participant in the transaction that the contract was one for a charter by W. T. Rainey & Co. The court correctly charged that if before, or when, he signed it, Munn had struck out the firm's name and notified Cox that it was not to be their contract, they would not be bound. But if he did not do so, if, under the circumstances rehearsed above, the employé of the firm, who, as one of his employers testified, "had authority to charter vessels for W. T. Rainey & Co.," signed, even with his own name, a contract which showed upon its face that it was a charter to that firm, the jury were warranted in drawing the conclusion that the contract was entered into by him as agent for the firm under the authority to contract for them which it is conceded he possessed. Indeed, any other conclusion would be so contrary to the evidence (assuming that the jury disbelieved the statement that Munn struck out the firm's name and substituted Wittenberg's) as to justify the court in setting the verdict aside. Therefore the court was correct in charging that if Munn did not tell Cox that the right name was not in the paper, but left him to understand that the defendants were the ones, "the verdict should be for the plaintiff," for the facts in the case warranted no other inference. Defendants' counsel correctly states the situation presented by the pleadings, viz.: That prima facie the contract signed "Ernest M. Munn" was Munn's personally, that the question was one of the intent of the parties, and that the "burden was upon the plaintiff to prove it, if he and Munn intended that the defendants should be bound"; and he might add, the further burden to prove that Munn had authority to bind them. But the difficulty with his present contention is that plaintiff, partly with his own proof, partly with that supplied by defendants, has successfully borne the burden and established his case, it being once conceded, as

it must be under the verdict, that there was no substitution of the name of Wittenberg, nor any repudiation of the declaration on the face of the instrument that it was tendered as a contract to W. T. Rainey & Co.

There are 33 assignments of error, all based upon exceptions to evidence admitted. This unusual number is to some extent accounted for in the following excerpts from the brief of defendants' counsel:

"The choice was presented to us of either permitting the case to be conducted in a way that ordinarily, it would seem, would not be sanctioned by a trial judge, or of constantly making objections. Having embarked upon the latter course at the outset of the case, we had to continue until the end."

In consequence, very many of the exceptions are of such a character as not to require any extended discussion.

The first four questions which were objected to asked plaintiff's broker to state (a) whether he had done business with the firm of W. T. Rainey & Co. prior to May 4, 1900; (b) what had been the character of that business; (c) for how long a period he had been doing business with them at that time; (d) where was the New York office of defendants. They were objected to as irrelevant and immaterial, and not admissible, without any evidence of or the production of the written contract sued on. The position taken on the trial and urged on argument here is that inasmuch as the suit was on a written contract the only proper order of proof was first to introduce the written contract, or account for its loss and prove its contents; and that proof of Munn's authority to enter into contracts—the four questions evidently were directed to that issue—should not be admitted until afterwards. This is hypercritical. The complaint averred that Munn was defendants' agent, and that defendants, through him, entered into a written contract. Both averments were denied by the answer, and it was wholly immaterial which was first proved. It might well be urged that the logical order of proof would be first to show the authority to contract, and then the making of the contract. The three assignments of error, Nos. 1, 2, and 3, presenting these exceptions, are wholly without merit.

A number of the objections were to questions so framed that it might be expected that the answers would set forth negotiations between Cox and Potter prior to the signing of the written contract. Counsel was entirely sound in his proposition that all prior arrangements and understandings were merged in the written instrument, and could not be introduced to vary it; but whatever error there may have been in allowing the questions was entirely harmless. At the close of the case there was no dispute as to the terms of the contract, and no suggestion of any agreement not expressed in the written document. This disposes of assignments of error Nos. 4 and 5.

Some of the exceptions were originally directed, or eventually turned out to be directed, to the order of proof—a matter which rests largely in the discretion of the trial court. For example, a witness was asked how Munn signed the contract. The objection that the writing was the best evidence was sound. But when plaintiff's counsel promised that he would show the loss of the document it was within the court's discretion to allow the answer, subject to its being struck out if counsel

failed to redeem his promise. He did redeem his promise, showing that the document had been delivered to defendants' agent, Munn, from whose custody it had disappeared. That, coupled with timely notice to produce served on defendants, was sufficient proof of loss. Had the document been lost while in the custody of plaintiff or his agents more detailed statements as to search for it might have been required. Objection was taken to other questions as leading. Such questions are not only allowable, but desirable, when it is necessary to get quickly through the unessentials of the cause, and come to the issues really in dispute; but, even under most liberal rulings, plaintiff's counsel was a conspicuous offender. Such questions as these were addressed to his own witnesses on the direct: "He put on them the same signature which he put on this paper of May 4th?" "Did he say whether or not Mr. Munn had been acting for him when this contract was made?" "Were not the times of reporting of the Jennie French Potter at Newport News and the time of her finishing loading at Lambert's Point noted upon the original memorandum which was made on May 4th?" These were most flagrant violations of all rules, and had not the court's patience been wearied by a host of earlier objections, multiplied and pertinaciously insisted upon in a persistent effort to control the court's discretion as to the order of proof, it would no doubt have administered some sharp rebuke, which would have curbed the propensity of plaintiff's counsel to testify instead of question. But here again the subject is largely in the discretion of the trial court, and we cannot see, now that all the testimony is in leaving only a single point of dispute, that the answer to a single one of the leading questions could possibly have prejudiced defendants' case with the jury. As to some other exceptions, the testimony of defendant Rainey that Munn "had authority to charter vessels for W. T. Rainey & Co." has deprived them of all force. These considerations dispose of assignments 6, 7, 8, 10, 11, 12, 13, 15, 16, 22, 23, 28, 30, 31.

The answers to the questions which were objected to as irrelevant and immaterial, and which are included in assignments 17 and 18, lead up merely to the proof of return of the original contract to Munn. They were certainly relevant and material, although the form in which they were put might not quite clearly indicate it.

The remaining assignments of error deal with exceptions to what defendants' counsel describes as "self-serving declarations, arguments of the parties among themselves, and incompetent declarations of Munn." There was evidence in the case which may be fitly so described, but upon an examination of the whole case we are not satisfied that its admission was harmful error. To illustrate: Plaintiff, as part of his own case, put in testimony of a conversation of Cox with Munn after the abandonment of the voyage, when it appeared that a bill for the demurrage made out against "W. T. Rainey & Co." was presented to Munn, was examined by him, and no objection made that they were not the proper parties to pay it; it being further testified that Cox did not at that time mention the name of Wittenberg, or suggest that he had anything to do with the contract. The testimony was improper, when offered; it was no part of the res gestæ, being much too late in time; and Munn's narrative of a past transac-

tion, or his implied admission by silence in respect to its character, was incompetent. Subsequently, when proof was being taken for the defendant, Munn testified that when he signed the contract he struck out the name "W. T. Rainey & Co." and inserted "C. J. Wittenberg." It was a circumstance which might have weight in determining any question as to his credibility, that when he subsequently received a bill made out to Rainey & Co. he did not call attention to the fact that it ought to have been addressed to Wittenberg. Munn further testified that on this later occasion, when he received from Cox the "tow bill, with some memorandum to figure the amount of demurrage," he told Cox that he would "take the thing to Mr. Wittenberg at once and deliver it to him," etc. The evidence already given by plaintiff as to this same later interview would have been admissible in rebuttal of Munn's testimony, so that the error, which admitted it before such testimony was given, was harmless.

Five letters were introduced on plaintiff's prima facie, some of which are particularly objected to. The first was from plaintiff to "Mr. E. M. Munn, Messrs. W. T. Rainey & Co.," dated August 13, 1900. There was no evidence that it was delivered or mailed to defendants; it was not answered by them. It states that the writer is surprised that bill for demurrage has not been paid, that he has called once and tried to communicate several times by telephone, unsuccessfully, and closes with a demand for a "definite understanding at once." Before it was offered defendants' counsel admitted that demand for the money was made prior to the commencement of the action. This letter was no part of a correspondence, and was wholly irrelevant and immaterial, but the statement of its contents supra indicates that it could have worked no prejudice to defendants. The same remarks apply to another letter similarly addressed by plaintiff, dated August 31, 1900, which briefly states that unless the claim be settled on September 5th he will proceed to collect the same, and will charge interest from June 2d. It was not answered. It is true that in a subsequent letter of defendants written from Philadelphia September 4th the words occur, "Yours of the 31st ult. has been duly received"; but internal evidence shows that they refer to another letter of August 31st sent to Philadelphia, and hereinafter referred to. This second letter of demand was irrelevant and immaterial, but harmless. It may be noted that before either of these letters were admitted plaintiff's counsel assured the court that there were answers to them.

A letter from defendants written by one of the firm, August 25, 1900, to plaintiff, was put in, which referred to a conversation of the day before (its substance not given), and added that on taking the matters up with Mr. Munn he advised that he had never chartered any boats to load at Newport News or Norfolk for W. T. Rainey & Co., and asking to be furnished with a copy of the charter party. To this plaintiff sent a reply dated August 31st. This reply states that effort has been made to find the charter, which is supposed to be on the schooner. It gives a synopsis of it (as set forth in the statement of facts, supra); states that it is signed by "your agent Mr. Munn"; asserts that suit would be brought unless the claim is settled, and complains of delay since June 2d. It closes with this postscript: "Your Mr.

Munn knows very well the contents of this charter, as it is only a duplicate of the hundred or more that have been signed for you during the last few years by Messrs. Cox & Co." To this letter defendants replied September 4, 1900, acknowledging its receipt, stating that Munn asserts he "never receipted [signed] any such order as you set out in your letter," and adding: "He says there was an order such as you set out sent to him addressed to Messrs. W. T. Rainey & Co., and that he struck out the name W. T. Rainey & Co. and inserted therein the name of C. J. Wittenberg, for whom he was acting in the matter." It denied that the schooner was taken for the firm or in the course of its business, and declined to recognize the claim. Defendants' letter was, of course, not objected to. It contained admissions material to the issues, and exactly what such admissions were could not be told without introducing the letter to which it was a reply, and which purported to give the text of the so-called "order." To that extent the plaintiff's letter was admissible as a part of the mutual correspondence, and defendants' counsel so conceded on the trial. It does not necessarily follow, however, that the whole of it was admissible for plaintiff on the direct. The assertions in the postscript were not assented to by the reply, and should have been excluded as self-serving declarations; but whatever error there was in admitting them was cured when defendant Rainey testified that Munn had authority to charter vessels for them, thus withdrawing that issue from the case. Besides the statement of the contents of the "order," and of the fact that Munn signed, all else in the letter of August 31st was harmless.

We find no harmful error in the record, and the judgment of the Circuit Court is therefore affirmed.