STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. LOUIS UNGER, WILLIAM F. LOONEY AND JOHN P. KELLY, PLAINTIFFS IN ERROR.

Submitted December 5, 1918—Decided June 17, 1919.

1. Upon the trial of an indictment of three members of a board of registry and election, where the judge charged that the duty of making comparison of the signature of the voter in the poll book with that in the registry book was cast upon the election officers, but also clearly and correctly charged, in the very language of the defendants' request, that not all of the election officers, but only one of them, was charged with that duty, in accordance with section 46 of the act of April 19th, 1911 (*Pamph. L., p.* 276, as amended by *Pamph. L.* 1916, *p.* 586), which provides that "one of the members of the board of registry and election shall compare the signature," such charge, if objectionable as to a portion thereof when considered alone, was correct and not misleading, considered as a whole, and could not have prejudiced the defendants.

2. Even if a portion of a charge, considered alone, is objectionable, it will not lead to a reversal when it is clear that, in the circumstances of the case, the charge, considered as a whole, was correct and not misleading and could not have prejudiced the defendants.

3. Where two or more defendants are indicted and tried together, the declarations of one, which have a legitimate tendency to establish his guilt, are admissible against him, even though not admissible against his co-defendants. In such case the proper remedy of the defendant against whom the declaration is not admissible is to request a limitation of its application.

4. It is within the discretion of the trial judge to admit in rebuttal, or at the time of rebuttal, evidence which is not strictly rebuttal, and which should or might have been offered in chief, and the admission of such evidence will not lead to reversal except in cases of gross abuse of such discretion.

5. In a criminal case the admission of evidence of declarations made by the defendant, offered by the state at the time of rebuttal, which should or might have been offered in chief, will not lead to a reversal when it was left open to the defendant to contradict it in surrebuttal if he had seen fit to do so.

6. It is not error for the trial judge to ignore or refuse a request for an instruction upon a matter immaterial to the issue.

7. The direction of a mistrial in a criminal case rests in the sound discretion of the trial judge and is to be exercised only in very extraordinary and striking circumstances, in order to prevent the failure of justice. Since it rests in discretion a strict bill of exceptions will not lie to its refusal, nor can it be availed of under section 136 of our Criminal Procedure act unless its refusal resulted in manifest wrong or injury.

8. A mistrial will not be directed in a criminal case because of misconduct or irregularity of jurors, or of another person towards them, unless it be such as might affect their impartiality or disqualify them from the proper exercise of their functions.

9. Where the doing of a wrongful act is conceded or otherwise proved, and the innocent intent is in issue, the doing of the same or a closely similar act so nearly related in time, place and circumstance that the mental state involved is practically continuous, is admissible upon the question of intent.

10. On the trial of an indictment of members of the board of registry and election for misconduct in allowing illegal voting and failure to comply with section 46 of the act of April 19th, 1911 (*Pamph. L., p.* 276, as amended by *Pamph. L.* 1916, *p.* 586), requiring comparison of signatures upon the registry and poll books respectively, it was not erroneous for the trial judge after charging, as requested by the defendants, that "the failure, if there was a failure, to O. K. the signature in the poll book cannot be a ground for liability" to add, "but the failure to O. K. may be considered by you as bearing on the other evidence in the case," when the evidence showed that in many instances the election officers having charge of the poll book at the time the voter signed his name, instead of strictly following the requirement of section 46 "by writing his initials after such signature" wrote the letters "O. K.," and that in many other instances there was an entire absence of the "O. K." and the initials.

---

On writ of error to the Hudson Quarter Sessions Court.

Before GUMMERE, CHIEF JUSTICE, and Justices SWAYZE and TRENCHARD.

For the plaintiffs in error, *Robert H. McCarter* and *Alexander Simpson*.

For the defendant in error, *Pierre P. Garven,* prosecutor of the pleas.

The opinion of the court was delivered by

TRENCHARD, J.    The plaintiffs in error were three members of the board of registry and election for the second district of the Second ward of Jersey City, and with one Hosbach, the fourth member, were indicted for misconduct at a special election held in Jersey City on October 7th, 1917, to fill a vacancy in the board of commissioners of Jersey City caused by the death of Commissioner Brensinger. Hosbach was not tried, but appeared as a witness for the state, and the three plaintiffs in error were convicted.

We are of the opinion that the judgment must be affirmed.

The indictment contained three counts. The first charged the defendants with knowingly and fraudulently receiving the votes of persons who the defendants knew impersonated and voted upon the names of others. The second count charges them with willfully and unlawfully aiding or abetting persons to vote upon names other than their own.; and the third count is based upon the alleged willful neglect and refusal of the defendants to carry into effect the provisions of secions 46, 47 and 48 of the act of April 19th, 1911 (*Comp. Stat., first supp., pp.* 547, 548), requiring the comparison of the signatures upon the registry and poll books respectively, and the challenge of voters in certain cases.

The first point is that "the trial judge erred in charging the jury with reference to the defendants' duty to compare the signature of the voter in the poll book with that in the registry book."

The real contention under this point is that the judge erroneously led the jury to believe that it was the duty of the entire election board to make such comparison. But that he did not do. True, he stated that the duty of making such comparison of signatures was cast upon the election officers, but he also clearly and correctly charged, in the very language of the defendants' request, that not all of the election

officers, but only one of them, was charged with that duty, and this was in accordance with section 46 of the act of April 19th, 1911 (*Pamph. L., p.* 276, as amended by *Pamph. L.* 1916, *p.* 586), providing that "one of the members of the board of registry and election shall compare the signature made in the poll book with the signature theretofore made by the voter in the registration book," &c. In view of the fact that different members of the board may make the comparisons at different times of the day, we are not prepared to say that the instruction was objectionable as to the portion complained of considered alone. But if so, that would not lead to reversal, because it is quite clear that in the circumstances of the case the charge on this topic, considered as a whole, was correct and not misleading and could not have prejudiced the defendants. *State v. MacDonald,* 89 *N. J. L.* 421; *affirmed,* 91 *Id.* 233; *Karyman v. Carlo,* 85 *N. J. L.* 632.

The next point is, that the trial judge erred in permitting Assistant Prosecutor McCarthy, called by the state in rebuttal, to testify as to certain declarations and admissions made to him by the defendant Unger after the election in question.

But we perceive nothing in this justifying a reversal.

Of course, where, as here, two or more defendants are indicted and tried together, the declarations of one, which have a legitimate tendency to establish his guilt, are admissible against him even though not admissible against his co-defendants. In such case the proper remedy of the defendant against whom the declaration is not admissible is to request a limitation of its application. This seems not to be seriously questioned by the defendants, but they insist that, even if proper in chief, it was not admissible in rebuttal. But it is within the discretion of the trial judge to admit in rebuttal, or at the time of rebuttal, evidence which is not strictly rebuttal, and which should or might have been offered in chief, and the admission of such evidence will not lead to reversal except in cases of gross abuse of such discretion. *State v. Skillman,* 76 *N. J. L.* 464; *affirmed,* 77 *Id.* 804.

In the present case no such abuse appears. It was entirely open to the defendant to have contradicted the evidence as to his declarations by testimony in surrebuttal if he had seen fit to do so.

It is next contended that "there was error in the trial judge's refusal to charge the defendant's thirteenth request."

That request read as follows: "13. The assistant prosecutor of the pleas, as such, has no authority to instruct the boards of election how to perform their duties; and any instruction or advice he gave them was not authoritative, nor entitled to more credence than that of any other intelligent man. The statute imposes upon the secretary of state the duty of issuing instructions, and the board was under no obligation to obey any instructions that Mr. McCarthy may have given."

But it is not error to ignore or refuse a request for instruction upon a matter immaterial to the issue (*Com.* v. *Adams,* 186 *Mass.* 101; 71 *N. E. Rep.* 78), and we think the question, whether the assistant prosecutor had or had not authority "to instruct the board of election how to perform their duties," was not material to the issue at the trial.

It is next contended that the action of the trial judge in refusing to direct a mistrial upon the ground that the jury, during the adjournment of the court, was subjected to improper influences, should result in a reversal.

It seems that at the trial four constables were sworn to take the jury to some convenient place, and there keep them separate from all others during the adjournment of the court, and not to permit any person to speak to them, nor speak to them themselves upon the subject of the trial, &c., and to that action, of course, no objection was or could properly be made.

It appeared, however, that in addition thereto, the trial judge (without the knowledge of the prosecutor of the pleas) directed one of the county detectives, attached to the office of the prosecutor of the pleas, to guard the jury against extraneous influences, and particularly with reference to tele-

phonic communications, and that such county detective was not sworn for that purpose. It also appeared that this county detective accompanied the jury and the constables to the hotel to which upon adjournment the jury was taken for the night, escorted some of the jurors and constables through the corridors, and talked with some of the jurors at the table in the dining-room in the presence of the constables.

These were the matters upon which the trial judge was requested and refused to order a mistrial.

We are bound to say that we think the conduct of the county detective in thus mingling and conversing with the jurors is deserving of censure, but whether it should result in a reversal is another question.

The direction of a mistrial in a criminal case rests in the sound discretion of the trial judge, and is to be exercised only in very extraordinary and striking circumstances, in order to prevent the failure of justice. Since it rests in discretion, a strict bill of exceptions will not lie to its refusal, nor can it be availed of under section 136 of our Criminal Procedure act unless its refusal resulted in manifest wrong or injury. *State* v. *Lewis*, 83 *N. J. L.* 161; *affirmed*, 84 *Id.* 417.

It is quite clear that the refusal to order a mistrial in the present case did not result in manifest wrong or injury. When the motion was made the county detective and all of the jurors were examined under oath, and it appeared without contradiction, and to the satisfaction of the trial judge, and to our satisfaction, that no communication *touching the case* was made to any juror by the county detective or any other person or by any of the jurors to the county detective or any other person. In that situation the trial judge rightly refused to grant a mistrial, for the rule is that a mistrial will not be directed because of misconduct or irregularity of jurors, or of another person towards them, unless it be such as might affect their impartiality or disqualify them from the proper exercise of their functions. *State* v. *Cucuel*, 31 *N. J. L.* 249; *Titus* v. *State*, 49 *Id.* 36.

The next point is that the trial judge erred in permitting the state to show that the defendant Unger himself voted at the election conducted by the defendants, although he was not registered, and permitted others to vote who were registered as living in places where they did not in fact reside.

We think the evidence was proper as bearing upon the question of the criminal intent of the defendants with respect to the illegal conduct charged in the indictment. Where, as here, the doing of a wrongful act is conceded, or otherwise proved, and the innocent intent is in issue, the doing of the same or a closely similar act so nearly related in time, place and circumstance that the mental state involved is practically continuous, is admissible upon the question of intent. *State v. Raymond,* 53 *N. J. L.* 260; *State* v. *Deliso,* 75 *Id.* 808.

The last point is that "there was error in the failure of the trial judge to charge the defendants' seventh request," which was that "the failure, if there were a failure, to O. K. the signature in the poll book cannot be a ground of liability under this indictment."

The judge did so charge, and it was not erroneous for him to add, as he did, "but the failure to O. K. may be considered by you as bearing on the other evidence in the case." The evidence showed that in many instances the election officer having charge of the poll book at the time the voter signed his name, instead of strictly following the requirements of section 46 "by writing his initials after such signature," wrote the letters "O. K." In many other instances there was an entire absence of the "O. K." and the initials.

The judgment under review will be affirmed.