THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. MARGUERITE DOLBOW AND NORMAN DRISCOLL, PLAINTIFFS IN ERROR.

Argued October 27, 1936—Decided February 2, 1937.

For the plaintiff in error Marguerite Dolbow, *Thomas G. Hilliard* and *Henry Burt Ware*.

For the plaintiff in error Norman Driscoll, *James Mercer Davis* (*John Warren,* of counsel).

For the defendant in error, *W. A. W. Grier* and *Robert Peacock*.

The opinion of the court was delivered by

LLOYD, J. On the night of August 2d, 1935, while Marguerite Dolbow and Harry Y. Dolbow, her husband, were living together on a farm in Mannington township, Salem county, the husband was killed by a series of blows on the head. That he was murdered seems not to be in dispute. Suspicion pointing to the plaintiffs in error, they were arrested, indicted, tried and convicted of murder in the first degree without recommendation of life imprisonment, subsequently being sentenced to death in accordance with the statute.

It is this conviction and sentence that the present writ of error was issued to review. The review is sought upon assignments of error and by the filing of causes for reversal under section 136 of the Criminal Procedure act of 1898, page 915. These will be dealt with as presented and argued and in the briefs of counsel for the plaintiffs in error.

The first two points argued are that the court erred in refusing to order a bill of particulars and in refusing to grant a severance of the defendants at the trial. These applications were addressed to the discretion of the court and the rulings thereon will not be disturbed, unless the accused have suffered injury thereby. *State* v. *Morris,* 98 *N. J. L.* 621; *affirmed,* 99 *Id.* 526; *State* v. *Nixon,* 86 *Id.* 371. A careful examination of the indictment as applied to the facts and the subsequent proofs satisfies us that the defendants suffered no injury by the denial of either application.

The next point is that a series of questions directed to and answered by the defendant Dolbow were improperly received, as also a confession alleged to have been made by her, proof of which was received in evidence. It is urged that it was not adequately shown that these statements and confession were voluntary, and also that the court did not actually pass upon the issue of whether they were voluntary. We think these contentions are without merit. There was abundance of evidence that the confession was voluntary and freely given and the trial judge was justified in receiving the proofs. Such ruling was in itself a disposition of the preliminary issue.

The further point that this proof was improperly received in the presence of the jury is also without merit as the jury itself would be called upon to determine the credit to be accorded to the statements and confession thus admitted by the court. *State* v. *Compo,* 108 *N. J. L.* 499.

Another series of complaints is that there was no evidence to show that the defendant Dolbow was a principal in the commission of the crime. The evidence of the state disclosed that the murder was carefully planned and arranged by the two defendants, and that it had been so planned and arranged for a considerable time prior to the night on which it was

executed. Both of them had endeavored to induce the witness Drummond to carry out this conspiracy for them. It further shows that arrangements were made on the night when the blows were struck to effect the death of Dolbow at that time. It is true that Mrs. Dolbow was in the house, while the blows were struck immediately outside, but she was their aiding and abetting and in legal intendment was a principal in the offense if the state's evidence was believed. *State* v. *Roesel, 62 N. J. L.* 216; *State* v. *Carlino, 98 Id.* 48.

It is next objected that the statements made by each defendant were received to the prejudice of the other. It is only necessary to say that such statements were received with scrupulous care by the judge and with equal care limited in their effect as applicable only to the one making them.

The objection that the state was permitted to call witnesses in rebuttal on matters which were not strictly rebuttal is also without substance. The order of trial is within the discretion of the court. *State* v. *Napolitano, 95 N. J. L.* 546.

Finally it is contended that there was error in following the procedure set forth in chapter 287 of the laws of 1935, page 918, which provides for the drawing of fourteen persons in the empanelling of the jury and this on the ground that the act is unconstitutional. This act provides:

"1. Any judge of the court of oyer and terminer, or judge of the court of quarter sessions, before whom a trial shall be commenced, which trial is likely to be protracted, may, in his discretion, order a jury empanelled not to exceed fourteen members, the members of which jury shall have the same qualifications and shall be empanelled and sworn in the same manner as is, or may be, provided by law for the empanelling of juries in such courts of oyer and terminer and courts of quarter sessions.

"2. All said jurors shall sit and hear said cause. Should any condition arise during the trial of said cause, which, in the opinion of the trial court, justifies the excusal of any of the jurors so empanelled from further service, he may do so, and the said trial shall proceed, unless the number of said jurors be reduced to less than twelve.

"3. In the event there shall be more than twelve jurors left on said jury, after the charge of the court, the clerk of the court, in the presence of said court, shall place the names of all of said jurors on slips, folded so as to conceal the names thereon, in a suitable box provided for that purpose by the clerk and shall draw therefrom twelve names, the first drawn to act as foreman. The twelve members thus drawn shall then proceed to determine the issue presented, in the manner provided by law."

It is urged that the act is unconstitutional: (1) in that it violates the due process clause of the federal constitution (fourteenth amendment), and (2) paragraph 7 of article I of our state constitution.

The legislation is of a type, though differing in phraseology, yet not in principle, with that adopted in a number of our sister states, and has been induced no doubt by the widening scope of criminal trials and the danger of mistrial through death, illness or other incapacity of jurors serving in such cases.

Trial by jury is undoubtedly not only of ancient origin but has frequently been called the bulwark of our liberties. It was so deeply imbedded in the foundation of the common law that it was said no change of government could prevail to abolish it. 3 *Bl. Com.* 349. It was composed of twelve men chosen from the viscinage and the common law institution is undoubtedly the jury system that we have inherited from England. *State* v. *James,* 96 *N. J. L.* 132. It is sufficient, however, if fundamentally retained.

As to the first contention that the act is violative of the due process clause of the federal constitution, we have no hesitation in holding that this provision is in nowise infringed. If the act is valid under our own constitution, it requires no argument to show that the fullest protection was accorded to the defendants in the trial of the cause. They knew the charge against them. They had every right of challenge accorded them by law, the fullest opportunity to present their proofs and to obtain the rulings of the trial judge on questions or objections raised during the progress of the trial. No

wrong was imposed in the manner of selection of the jury (unless the act be itself unconstitutional), in the rulings of the court, or in the submission of the cause to the jury.

Turning to our own state constitution, it provides in article I, paragraph 7 that "the right of trial by jury shall remain inviolate; but the legislature may authorize the trial of civil suits, when the matter in dispute does not exceed fifty dollars, by a jury of six men."

The inventions and discoveries of modern science open wide the door to the criminal, and of necessity must be likewise availed of by society to secure the conviction and punishment of offenders. These inventions and discoveries greatly expand the character, quality and quantity of proof adduced, thereby widening trials in time far beyond those in the days of our fathers.

It has been universally conceded that the greatest deterrent to crime next to certainty of punishment is the promptness of trial and conviction. Not only does such promptness produce efficient results in the seclusion or extermination of offenders, but results far greater are secured in restraining those criminally inclined. Trials long deferred, or delayed, result in the loss of evidence through death, illness, absence and obscured memory of witnesses. One of the great causes of defeated justice has been the mistrial due to the death, illness or other incapacity of jurors, thus necessitating retrial with the resultant dangers of the type referred to.

It is in this situation that legislation of the class, here involved has found its origin and must be sustained if not clearly in conflict with our fundamental law.

Every presumpton is in favor of the constitutionality of legislation, and an act must be sustained unless clearly repugnant to the constitution of the state. *Attorney-General* v. *McGuinness*, 78 *N. J. L.* 346.

Starting with this presumption and obligation in construction are we obliged to find that the act wherein it requires that fourteen shall be sworn, two eliminated by lot, and the remaining twelve left to decide the guilt of the defendants, is clearly violative of the provision of the constitution already

quoted? In principle the answer has been in the negative in a number of our sister states and we think must be so answered here.

It is true that at the inception of the trial it was unknown who of the fourteen so sworn would finally pass upon the issues involved, but certain it was that twelve of the number, lawful fellow citizens of the accused and free from taint or bias would do so, and until this result by unanimous vote was reached, their lives and liberty could not be jeopardized.

We are not impressed that because these certain twelve were not definitely ascertained until the proofs were closed that any constitutional guaranty was invaded or that legal injury to the accused resulted. It is not to the personality of jurors that evidence is adduced and argument presented, but to the intellect. It is not to sympathy, prejudice or friendship that appeal can be legally made. If the jurors are indifferent between the parties (and they are, when legally chosen, conclusively presumed so to be), their individual character and personality become likewise a matter of indifference.

It is the substance and spirit of the constitution that must remain inviolate, and if this has been preserved we should not avail ourselves of the matter of mere form to declare the act void. That this is true we think finds support in another memorable modification of our jury system. The nineteenth amendment to the federal constitution, ratified August 26th, 1920, declares that "the right of citizens of the United States to vote shall not be denied or abridged by the United States or by any state on account of sex." This amendment conferred no right on women to serve on the juries in our courts; it conferred nothing but the right of franchise. It took legislation to qualify them to serve on juries, and this was done by the legislature of 1921, chapter 28, page 50. By this act and this act alone was the door opened to the members of that sex to participate as qualified jurors. From that date to the present time women have been serving as jurors in many counties of the state and participating in many cases with none to challenge their right.

If there was any one feature embedded in the jury system at common law it was that men and men only should serve as jurors. That this is true is established not only by the history and practice of the jury system, but by the language of the constitutional provision authorizing a jury of six *men* where the amount involved did not exceed fifty dollars, and it was so declared by this court in the case of *State* v. *James, supra,* wherein it was said that up to that time "neither by the constitution nor any statute of this state, was it provided that women should or *might* be jurors." There is of course a difference in the sexes, and, in the view of many, in ways beyond the physical structure. There was thus introduced by legislation alone a radical departure from the jury system as we received it from the mother country and had practiced it exclusively up to that date. There was thereby a radical change in the composition of the jury, but not a change in substantial right.

So with the legislation now before us. Formal change but no substantial modification is effected. Twelve jurors and twelve only determine the guilt of the defendants. These twelve sat throughout the trial, heard the proofs and unanimously rendered their verdict. That two of the potential jurors not finally chosen sat throughout the trial was not injurious to the defendants. They were unimpeached and unimpeachable. They were bound by the same oath. There is neither proof nor suggestion that during the progress of the trial the ultimate twelve were contaminated by their presence.

Turning to the legislation in other jurisdictions, we have been furnished by counsel with a list of sixteen states with like constitutional limitations adopting by statutory enactment alone substantially the same legislation. These include the important states of California, Illinois, New York, Michigan and Ohio. To this is to be added the federal congress. Some of these statutes are in language similar to our own; others call for the empanelling of a jury of twelve and alternates of one or two. They have been sustained in such states

as New York, *People* v. *Mitchell,* 266 *N. Y.* 15; *People* v. *Peele,* 54 *Cal. App.* 333, and in *State* v. *Dalton,* 206 *N. C.* 506.

As already indicated in what we have said before this difference we think is in form and not in principle. In both cases the doubt as to what individuals shall ultimately decide the issue remains until the evidence is closed, and it was open to the legislature to choose either of the two. In adopting the course it did it may well have been with the thought that fourteen potential jurors, each of whom stood an equal chance of functioning as a juror, would give closer attention to the evidence and to the arguments than would alternate jurors who stood to act only in the remote contingency of disqualification in the twelve first chosen.

It has been suggested that too broad a power is vested by our act in the trial judge in that it permits the judge to order the empanelling of fourteen members where the trial is likely to be protracted, and in further authorizing him in his discretion to excuse a juror should a condition arise during the trial justifying such course. This we think presents no constitutional question and we are not impressed by the fear that the power will be abused. In someone must be reposed the right to determine when the fourteen members shall be called and to determine when during the trial a juror should be excused. Like power already exists in the right to excuse, to declare a mistrial, and in the selection of struck juries. Certainly in no safer place could the authority thus given be reposed than in the judge of the court. The dangers suggested in the power to excuse jurors we think do not exist, and if upon occasion the authority thus given should be exercised improperly there is ample power of review to correct the wrong that may be done.

There are other assignments and specifications filed but these call for no special comment further than to say that the verdict rendered by the jury was fully justified by the evidence and that the case was submitted to the jury under ample instructions from the court to which we can find no legal objection.

Finding no error, the judgments are affirmed.

Case, J.   (Dissenting.)   In my opinion chapter 287, *Pamph. L.* 1935, contravenes the constitutional provision that "the right of trial by jury shall remain inviolate   *   *   *." Assuming, for the purpose of the argument, that the method of drawing and placing the fourteen jurymen, and of selecting the final twelve by lot after the trial, is without fault, I consider that the broad power given to the court to discharge jurors from the box during the course of the trial is a substantial violation of the jury principle.   The chief offense of the statute lies therein; namely, the court is given the clear power, during the progress of the trial, to discharge a juror upon the arising of any condition "which, in the opinion of the trial court, justifies the excusal."   A moment's imagining readily suggests conditions which might justify such action except for the constitutional inhibition but which nevertheless are not a justification with our underlying law as it is.   Some of our constitutional provisions are monuments set up out of bitter human experience in the determination that the events that gave them rise should never again occur. The jury provision is one such.   There can be no doubt that trial by jury as developed in England was, within its special factual field, a reservation of power from the law judges, usually spoken of as the courts, and in general a barrier against infiltrating governmental influence of any sort.   Anything that works contrary to that result is by so much contrary to the essence of the constitutional provision.   I apprehend that the statute gives powers that may be so used.   The power to make selective elimination from the jury as the trial advances, and thus to determine, in the light of accumulating proofs and the apparent varying reactions by the several jurors, who shall remain to constitute the twelve, is potentially in sharp conflict with the ancient jury concept.   The incapacity of a juror to remain in the box is, when it happens, usually an obvious fact and power on the part of the court to excuse, when limited to this exigency, may be correlated with the present practice of declaring a mistrial on the happening of that incident.   That far we would be on known ground and the novelty would lie in drawing an alternate to

take the place of the excused juror and thus to avoid a mistrial. The rather wide movement to adopt legislation of this general character is due, as I understand, to just that, namely, the desire to avoid what would otherwise inescapably be a mistrial after the spending of much time, effort and money in bringing the trial down to that point.

But the powers and the procedure set forth by our statute are not those adopted by the great majority of the eighteen jurisdictions (including the federal government) which have passed comparable legislation. We are informed, without contradiction, that the only jurisdiction wherein language like that of our statute is used is the State of Michigan which has a quite different constitutional provision. It appears that with the exception of that state, and also possibly of the State of Kentucky where as is indicated by an incomplete reference placed before us power may be exercised upon "reasonable" grounds, the authorizing statutes are grounded upon a definite inability, such as death, illness or family disaster, on the part of the juror. The New York statute is illustrative:

"If, before the final submission of the case, a juror die, or become ill, or for any other reason he be unable to perform his duty, the court may order him to be discharged and draw the name of an alternate, who shall then take the seat of the discharged juror in the jury box, and be subject to the same rules and regulations as though he had been selected as one of the original jurors." *People* v. *Mitchell,* 266 *N. Y.* 15; 193 *N. E. Rep.* 445.

Power on the part of the court to remove a juror, sworn and actually sitting, for reasons that do not center upon the juror's inability to serve seems not to be essential to the aim of the general legislative movement. I cannot see that any result consistent with maintaining the constitutional provision inviolate is to be obtained by that excess of control.

It is not enough that we of the courts do not apprehend that the broad discretionary power given in our statute will be abused. That is not an excuse for any statutory trespass upon constitutional prohibitions. If any of the basic rights

that are inherent in the jury system are to be changed, or if, which is a phase of that hypothesis, trial courts are to be given powers which by fair exercise may be used to that end, authority should first be had by constitutional amendment.

Mr. Justices Parker and Heher, and Judges Wells, Rafferty and Cole authorize me to say that they join in these views.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TREN-CHARD, LLOYD, BODINE, PERSKIE, HETFIELD, DEAR, WOLFS-KEIL, JJ.   9.

*For reversal*—PARKER, CASE, HEHER, WELLS, RAFFERTY, COLE, JJ.   6.