## UNITED STATES v. MONTGOMERY.

### No. 7847.

Circuit Court of Appeals, Third Circuit.

Argued Nov. 6, 1941.

Decided Jan. 6, 1942.

As Amended March 6, 1942.

Rehearing Denied March 7, 1942.

Michael Serody, of Philadelphia, Pa. (Jacob Weinstein, of Philadelphia, Pa., on the brief), for appellant.

W. Orvyl Schalick, Asst. U. S. Atty., of Camden, N. J., for appellee.

Before CLARK and JONES, Circuit Judges, and GANEY, District Judge.

JONES, Circuit Judge.

The appellant, along with others, was indicted and convicted for defrauding the United States of tax, possessing an unregistered still and fermenting mash, and removing, etc., untaxed distilled spirits in violation of the internal revenue law, 26 U.S.C.A. Int.Rev.Code §§ 2810, 2833, 2834 and 3321. In support of his appeal from the judgment entered on the jury's verdict, the appellant alleges that certain evidence was improperly received in rebuttal when it should have been offered in the government's case in chief; that certain questions propounded to a witness in direct examination by the government's attorney should have been excluded because they were leading; and that the trial court

erred in denying the defendant an opportunity to impeach the credibility of a witness for the government by showing that he had been convicted of a misdemeanor for the desertion of his wife and children.

Briefly stated, the facts giving rise to the questions raised by the appellant show the following. One Giannini, a confessed accomplice, testified for the government. For the purpose of corroborating him, one Michael DeLeone, another of the indictees, was called as a witness. Subsequently, Leo DeLeone, a brother of Michael, was called in rebuttal and testified that the defendant Montgomery had warned Michael DeLeone to stay away from the Hovis farm (the site of the still) and that Michael tried to induce Montgomery to procure the release of the other defendants then in custody, which Montgomery agreed to do after a short time had elapsed.

Montgomery, as a witness in his own behalf, in order to show bias on the part of Giannini, testified that about one month before the first trial of the case (the trial here involved being the third) he and Giannini had engaged in a fist fight during which Giannini drew a gun on him, and further that the meeting which led to the fight was a chance encounter and had not been prearranged. The government recalled Giannini who testified, over objection by the defendant, that the meeting had been prearranged by Montgomery to enable the latter to induce Giannini to testify falsely by paying him for that purpose. It is this testimony in rebuttal which the appellant contends should have been introduced during the government's case in chief.

As to the second contention, the questions put to Leo DeLeone, who was called in rebuttal with respect to statements which Montgomery in his own behalf had denied making, were leading in form but were permitted over objection. The questions put to Giannini when recalled in rebuttal were also leading in form but the objection interposed at trial by the defendant was that the evidence was not proper rebuttal.

The third contention rests on the fact that during the cross-examination of Leo DeLeone, defendant's counsel, for the purpose of impeaching him, asked the witness if he had not been convicted of a misdemeanor in Pennsylvania for the desertion of his wife and children. Upon objection

of government's counsel, cross-examination on the matter indicated was disallowed by the court.

The foregoing embraces the whole of the errors assigned and no exceptions were taken to the court's charge to the jury.

■ ■ Even assuming that the testimony of Leo DeLeone and so much of Giannini's as was offered in rebuttal might have been properly introduced by the government in its case in chief, its admission in rebuttal did not of itself constitute reversible error. It is well settled that the order of the reception of evidence lies largely in the discretion of the trial judge, whose action will not be reversed on appeal unless it amounts to a gross abuse of discretion. Goldsby v. United States, 160 U.S. 70, 74, 16 S.Ct. 216, 40 L.Ed. 343; Diehl v. United States, 8 Cir., 98 F.2d 545, 548; United States v. Hirsch et al., 2 Cir., 74 F.2d 215, 219; Hoffman et al. v. United States, 10 Cir., 68 F.2d 101, 103; Miller v. United States, 8 Cir., 21 F.2d 32, 38; Osborne et al. v. United States, 9 Cir., 17 F.2d 246, 250; Marron et al. v. United States, 9 Cir., 8 F.2d 251, 257; Austin v. United States, 9 Cir., 4 F.2d 774, 775; United States v. Heitler et al., D.C.N.D.Ill., 274 F. 401, 406; State v. Dolbow et al., Err. & App., 117 N.J.L. 560, 189 A. 915, 917, 109 A.L.R. 1488; State v. Genese, Err. & App., 102 N.J.L. 134, 130 A. 642, 646; State v. Unger et al., Sup., 93 N.J.L. 50, 107 A. 270, 271; State v. Skillman, Sup., 76 N.J.L. 464, 70 A. 83, 86. Abuse of discretion in such regard arises only where the order of proof permitted by the trial judge is harmful or prejudicial. Such is the case where a contradiction by rebuttal is made to revolve about a fact directly material to the issue and which is not proven substantively throughout the case (Whealton et al. v. United States, 3 Cir., 113 F.2d 710, 716), or the evidence in rebuttal is of a subsequent transaction which has no evidentiary bearing on any issue presented by the trial (Coulston v. United States, 10 Cir., 51 F.2d 178, 180), or where the evidence in rebuttal is offered to discredit a witness with respect to a purely collateral matter which was brought into the case by cross-examination of a witness. Cohen v. United States, 1 Cir., 56 F.2d 28, 30; United States v. Sager et al., 2 Cir., 49 F.2d 725, 730.

■ The appellant shows no recognizable prejudice resulting from the admission of the testimony in rebuttal. And, thereby, he fails to carry the burden resting upon him. Morgan et al. v. United States, 8 Cir., 98 F.2d 473, 477; Haywood et al. v. United States, 7 Cir., 268 F. 795, 798. He admits that the testimony was relevant (Brief of Appellant, p. 8) and objects only to the time of its receipt in evidence. Furthermore, the testimony of Leo DeLeone, which was offered for the purpose of contradicting the defendant's testimony in his own behalf, never became evidentiary until rebuttal. It was therefore not even subject to discretionary exclusion by the trial court, being competent, relevant and material and having been proferred timely. See 6 Wigmore on Evidence, 3rd Ed., § 1873 (p. 517).

■ The extent to which leading questions may be indulged and not taint the examination with impropriety is likewise a matter primarily for the discretion of the trial judge. St. Clair v. United States, 154 U.S. 134, 150, 14 S.Ct. 1002, 38 L.Ed. 936; Linn v. United States, 2 Cir., 251 F. 476, 482, 483; Rainey v. Potter, 2 Cir., 120 F. 651, 655; Peters v. United States, 9 Cir., 94 F. 127, 140. As to the testimony of Leo DeLeone, it was necessary in the very nature of the circumstances that the questions asked of him in rebuttal be leading. He had been called to refute specific testimony of the defendant Montgomery. In order to elicit categorically DeLeone's refutations, it was essential that the questions be framed in language cognate to the contradictory testimony of Montgomery. In such instance, leading questions are as proper as they are necessary. 3 Wigmore on Evidence, 3rd Ed., § 779. As to Giannini's testimony in rebuttal, the defendant's only objection was that it was not proper rebuttal. This of course did not raise the legal question which the appellant now urges. From any viewpoint, it is our opinion that the trial court's refusal to sustain the defendant's objection to the form of certain questions asked by government counsel in rebuttal did not amount to an abuse of discretion nor, by the same token, reversible error.

■ Finally, the appellant contends that the trial court erred in refusing him leave to impeach a witness for the prosecution by showing that the latter had been convicted of deserting his wife and children in Pennsylvania where that particular offense is denominated a misdemeanor. In this connection, the appellant argues that,

as the offense of desertion was likewise a misdemeanor at common law in New Jersey, at the time of the adoption of that state's constitution on September 2, 1844, and, later, by state statute enacted in 1937, N.J.S.A. 2:121–2, a conviction for the same character of misdemeanor which the state law thus denounces may be used in a trial in New Jersey to stigmatize the offender's credibility. In so contending, the appellant quite evidently assumes that this question of evidence, in the trial of a federal criminal case, is to be resolved by the law of the state wherein the trial is held. So far as the rule upon which the appellant relies resides in New Jersey law made or enacted since 1789, it is of no effect upon the rules of procedure or evidence in the trial of a federal criminal case. Long ago the Supreme Court said that "no law of a State made since 1789, can affect the mode of proceeding or the rules of evidence in [federal] criminal cases." United States v. Reid, 53 U.S. 361, 12 How. 361, 366, 13 L.Ed. 1023. While the Reid case has since been considerably restricted or altered with respect to the binding effect in federal criminal trials of state law as it existed in 1789, the rule declared in the Reid case as hereinabove quoted has never been derogated in principle. In no event, therefore, did the learned trial court in the instant case err in declining to be bound by the rule of evidence which the appellant advanced on the basis of New Jersey law made since 1789.

As to the law of New Jersey as it existed in 1789, the appellant points us to no pertinent rule of that state with respect to the impeachment of a witness by showing his prior conviction of crime. In fact there was then no occasion for a ruling in such regard. Quite generally in 1789, convicted persons were incompetent as witnesses. Consequently, the question of their credibility or the method of impeaching it did not arise in practice. But even if New Jersey had had such a rule of impeachment in 1789, a federal court sitting in that state would no longer be bound thereby in the trial of a criminal case. It is in that particular that the effect of the Reid case has been changed by later decisions.

In Benson v. United States, 146 U.S. 325, 335, 13 S.Ct. 60, 63, 36 L.Ed. 991, where the question of a witness' competency arose in a federal court sitting in Kansas, the Supreme Court proceeded to examine "in the light of general authority and sound rea-son" the question of evidence there pre-sented. (The further ruling of the Reid case as to the binding effect of state law as it existed in 1789 was later imputed by Logan v. United States, 144 U.S. 263, 303, 12 S.Ct. 617, 36 L.Ed. 429, to state law as it existed at the time of the particular state's admission to the Union after 1789.) However, the binding effect in a federal criminal trial of state law, either as it existed in 1789 or upon a state's later admission to the Union, was not directly involved in the Benson case. There the appellant had sought to use the decision in the Reid case as a ruling that in a federal court a co-defendant is incompetent as a witness.

But the question whether state law as it existed in 1789 is any longer binding upon a federal court in the trial of a criminal case came squarely before the Supreme Court in Rosen v. United States, 245 U.S. 467, 470, 471, 38 S.Ct. 148, 150, 62 L.Ed. 406, and was answered in the negative. In the Rosen case, the defendant's objection to a witness' competency because of a prior conviction for forgery would have been sustainable if the common law of New York, as it existed in 1789, still controlled, but the District Court overruled the objection and permitted the witness to testify, thus denying any effect in the federal trial to the New York common law of 1789. The Court of Appeals, 2 Cir., 237 F. 810, approved the action of the District Court and, on certiorari, the Supreme Court affirmed the lower courts. In so doing, the Supreme Court again considered the question of competency "in the light of general authority and of sound reason" and, being satisfied "that the legislation and the very great weight of judicial authority which have developed in support of this modern rule [as distinguished from the New York common law rule], especially as applied to the competency of witnesses convicted of crime, proceed upon sound principle", the Supreme Court further concluded at page 471 of 245 U.S., at page 150 of 38 S.Ct., 62 L.Ed. 406, "that the dead hand of the common-law rule of 1789 should no longer be applied to such cases as we have here" (question of evidence in federal criminal cases).

The effect of the decision in the Rosen case was further interpreted by the Supreme Court in Funk v. United States, 290 U.S. 371, 379, 54 S.Ct. 212, 214, 78 L.Ed. 369, 93 A.L.R. 1136, where the Court said: "With the conclusion that the controlling

rule is that of the common law, the Benson case and the Rosen case do not conflict; but both cases reject the notion, which the two earlier ones [Reid case and Logan case] seem to accept, that the courts, in the face of greatly changed conditions, are still chained to ancient formulæ and are powerless to declare and enforce modifications deemed to have been wrought in the common law itself by force of these changed conditions." Then followed Wolfle v. United States, 291 U.S. 7, at page 12, 54 S.Ct. 279, 78 L.Ed. 617, wherein the Supreme Court said that: "During the present term this Court has resolved conflicting views expressed in its earlier opinions by holding that the rules governing the competence of witnesses in criminal trials in the federal courts are not necessarily restricted to those local rules in force at the time of the admission into the Union of the particular state [California in that case] where the trial takes place, but are governed by common-law principles as interpreted and applied by the federal courts in the light of reason and experience."

It may therefore be taken as the rule that in the trial of criminal cases federal courts are bound by such rules of procedure and evidence as Congress prescribes and such further rules as the federal courts have adopted or from time to time may adopt in the light of general authority and sound reason. So treating with the question raised in the instant case, we believe the rule with respect to impeachment for former conviction, as generally applied by federal courts in criminal cases, to be that it is only convictions for felony or misdemeanors amounting to *crimen falsi* which are admissible to impeach a witness' credibility. The crime of desertion falls within neither of these categories. It is not a felony (being specifically denominated a misdemeanor), nor is it a misdemeanor which amounts to *crimen falsi*. The law would hardly impute unworthiness of belief to one of the parties to marital differences merely because of such differences. The fault in such regard might not even lie with the one sought to be impeached. We therefore conclude that the learned trial judge did not err in excluding the evidence which the defendant proffered for the impeachment of the witness Leo DeLeone.

The judgment of the District Court is affirmed.