**UNITED STATES of America ex rel. David T. FELTON, E–4270, Appellant,**

v.

**Alfred T. RUNDLE, Superintendent.**

**No. 16977.**

United States Court of Appeals Third Circuit.

Argument En Banc Nov. 26, 1968.

Decided May 8, 1969.

David Rudovsky, Asst. Defender, Defender Assn. of Philadelphia, Melvin Dildine, Chief, Appeals Div., Herman I. Pollock, Defender, Philadelphia, Pa., for appellant.

James D. Crawford, Asst. Dist. Atty., Richard A. Sprague, First Asst. Dist. Atty., Arlen Specter, Dist. Atty., Philadelphia, Pa., for appellee.

Before HASTIE, Chief Judge, and BIGGS, KALODNER, FREEDMAN, SEITZ, VAN DUSEN, ALDISERT and STAHL, Circuit Judges.

OPINION ON ARGUMENT EN BANC

KALODNER, Circuit Judge.

The relator Felton was sentenced by a Pennsylvania Court in March, 1966 to serve a ten to twenty year prison term following a jury trial in which he was found guilty of aggravated robbery.[1] The relator is now incarcerated in a Pennsylvania prison for violation of parole. Service of the ten to twenty year sentence imposed in March, 1966 is to commence at the expiration of his current parole violation sentence.

The relator's conviction was affirmed by the Superior Court of Pennsylvania, Commonwealth v. Felton, 208 Pa.Super. 737, 221 A.2d 575 (1966) and his petition for allocatur was denied by the Supreme Court of Pennsylvania in February, 1967. He filed a petition for a writ of habeas corpus in April, 1967, in the court below which was denied on June 2, 1967. Following denial of rehearing several weeks later he appealed to this Court.

The appeal was submitted to a panel of this Court on the relator's *pro se* brief and a brief filed by the District Attorney of Philadelphia County, Pennsylvania, in behalf of the respondent Rundle.

The panel reversed the lower court's denial of relator's petition for a writ of habeas corpus and remanded with directions to grant it. In its Opinion it stated that "The only substantial issue before this court is whether due process requires that a state prosecutor permit a defendant upon request during trial to inspect a police report containing a detective's written narration of a witness' oral statements."

The District Attorney thereafter filed a petition for court en banc rehearing which was granted. We appointed counsel for the relator and granted the parties leave to file supplemental briefs and present oral argument.

The hard core of the state's position is that (1) the trial record establishes that the relator neither requested, nor was denied, inspection of the police report, by it or the trial court; (2) the report contained only "summaries" of interviews with witnesses and as such was not admissible as evidence; and (3) the report did "not meet the required standards of materiality" and thus the relator is not entitled to relief under any due process concept.

The sum of the relator's contention is that he requested inspection of the report and that it was refused by the state prosecutor, and that refusal to permit a defendant "the right to inspect a police report containing a detective's written narrative of a witness' oral statement" violates due process rights under the Fourteenth Amendment.

Critical to our consideration are these facts adduced by the trial record and the record below:

On January 29, 1965, about 7:30 P.M., three men entered the grocery store of Rubin Selikson. One of the men stated, "This is a hold-up", while another grabbed Selikson. His son Sheldon ordered the man to release his father, and subsequently forced him to do so. Thereupon another of the men attacked Sheldon with a knife. Sheldon seized a boning knife from behind a counter to protect himself and his assailant twice impaled himself upon it. At the same time the third of the trio attacked Tyrone Moore, an employee of the Seliksons. Moore grappled with his assailant who was armed with a knife and they wrestled to the floor. Moore's assailant then broke loose and rushed out of the store along with the man who had attacked Rubin. The injured man followed them.

Police who arrived a few minutes later questioned the two Seliksons and Moore, and were told in substance the facts above recited. The trial record, and that below, does not disclose the identity of the police who questioned the Seliksons and Moore. The questioning took place

1. The jury also found the relator guilty of aggravated assault and battery, and assault and battery, but sentence was suspended on these counts of the indict-ment. The jury found relator not guilty of assault and battery with intent to commit murder.

at the grocery store between 8:05 P.M. and 8:15 P.M. A summary police report was written the following day—January 30, 1965. It discloses that Detective Finkelstein was the investigator assigned to the case. It does not contain specific questions or answers thereto by the Seliksons or Moore, but only their substance. It contains a summary report of information gleaned from Rosetta Sellers, a friend of the relator, who was questioned by unidentified police at the police station, some four and a half hours after the hold-up. The sum of the information gathered, as disclosed by the report, is that the relator came to Rosetta's apartment between 7:30 P.M. and 8:00 P.M. January 29, 1965; his clothes were blood-stained; he told her he had been in a fight; and she took him to a hospital after he changed his clothes.

The report also discloses that Detective Finkelstein, in the course of his investigation, traced the relator to the Hahnemann Hospital, in Philadelphia; he was there found to be suffering stab wounds in his chest; that the relator, in response to Finkelstein's questioning, denied implication in any robbery and claimed he had been stabbed in a fight following a crap (dice) game. The report further recites that Sheldon Selikson arrived at the hospital about 10:45 P.M. the night of the hold-up, and identified the relator as the man who had attacked him and who had been stabbed with his boning knife, and that the relator continued to insist that he had nothing to do with any robbery.

What has been said brings us to the relator's contention that he had been denied, at his trial, his request for an inspection of the police report, and that the denial violated his due process rights.

Relator's contention is based on the following excerpted cross-examination by his trial counsel, Austin L. Hogan, Jr., of the Commonwealth's first witness, Rubin Selikson:

By Mr. Hogan:

"Q. So that you reported this to the policemen?

"A. That's right.

"Q. And did you at that time, sir, give the policemen a description of the men who had robbed you?

"A. Yes.

\*    \*    \*    \*    \*    \*

"Q. Could you give the police any information, sir, about the man's facial makeup?

"A. No.

"Q. Now, sir, have you at a later time made a statement to detectives about this case?

"A. Yes.

"Q. Was this taken down in writing in your presence by the detective?

"A. They took it down in writing.
"Mr. Hogan:

"If Your Honor please, may I respectfully request that this statement be made available to the defense?

"Mr. Marino [assistant district attorney]: There is no formal statement in this matter, sir, that I am aware of. *It was just a statement that the detective noted with regard to the incident.*

"Mr. Hogan: If Your Honor please, I believe the—
"BY THE COURT:

"Q. *Did you sign the statement?*

"A. *No, I did not sign it. It was just a statement of facts for them to broadcast on the radio.*

"The Court: *Well, when the policeman gets on the stand, you can question him. If you have to recall Mr. Selikson, you may do so.*

"Mr. Hogan: *Very good, sir."* (emphasis supplied)

No objection was made by defense counsel to the trial judge's ruling.

Nor did defense counsel during his cross-examination of the other Commonwealth witnesses inquire of them if they had given the police any statement, signed or otherwise, with reference to the hold-up. Further, at no other point during the trial did the relator's counsel

make any request to inspect the police report.[2]

In particular, when Detective Finkelstein took the stand he was not questioned by defense counsel or the prosecution as to the police report other than in the respect detailed below, nor was he asked if he or any other policeman had obtained a statement, signed or otherwise, from the Seliksons, Moore, Rosetta Sellers or anyone else, despite the trial court's statement, above recited, that "Well, when the policeman gets on the stand, you can question him." and "If you have to recall Mr. Selikson, you may do so."

Finkelstein testified on direct examination that he had located the relator at the hospital and visited him there at 10 P.M. on the night of the hold-up; the relator told him "that he had been in a crap game" and that "he had an argument up there"; that he summoned the two Seliksons to the hospital and "they identified the defendant as the man who had been in their store earlier, and Sheldon identified him as the man that he had stabbed"; he then placed the relator under arrest; and he later visited Rosetta Sellers' apartment and found the relator's bloodstained coat there with two cuts in it.

In his cross-examination of Finkelstein, defense counsel Hogan asked this single question:

"Detective, you gave us part of a statement that was made to you by the defendant. Would you read the rest of it?"

It was answered by Finkelstein as follows:

"Well, he stated that he had been in a crap game at 3351 Dauphin Street and that he had an argument and he had

gotten into a fight and had been cut twice by one of the other men. He didn't know his name. After he was cut, a friend of his by the name of Country— name and address unknown—took him to his mother's house, and that his girl friend was summoned from her place, and she was the one that took him to the hospital."

At this point Hogan said:

"I have nothing else."

Subsequent to the prosecution's redirect examination as to the details of Finkelstein's investigation with reference to the location of the alleged crap game, Hogan confined his recross-examination to the relator's condition when Finkelstein visited the hospital.

Hogan then rested and offered no defense testimony.

To what has been said may be added that the trial record fails to disclose that the relator's trial counsel ever made any request to the prosecution, prior to the trial or during its course, for an inspection of the police report, other than that disclosed in the above excerpted testimony. Nor does the relator now contend otherwise.

▮ Upon consideration of the trial record and that below we are of the opinion that the relator was not denied due process as claimed and that the court below accordingly did not err in denying his petition for a writ of habeas corpus.

▮ It is settled law that a trial court may control the course of presentation of testimony to the extent that such control is not unduly restrictive or in violation of constitutional rights.[3]

2. While prosecution witness Tyrone Moore was questioned as to what he had told the police, he was not asked whether he had supplied them with a written or signed statement, or if he knew whether what he had told the police was incorporated in a police report. Prosecution witnesses Sheldon Selikson and Rosetta Sellers were not even questioned on the score of what they had told the police, nor were they asked whether they had made written or signed statements, or knew whether what they had told the

police was incorporated in a police report.

3. 23 CJS Criminal Law § 961, at 835–838 (1961) states:
"Except to the extent that the trial judge is controlled by established jurisprudence or statutes regulating criminal procedure, the conduct of the trial generally rests in his sound discretion, to be exercised in an effort to do substantial justice." (footnotes omitted).

In United States v. Montgomery, 126 F.2d 151 (1942), cert. den. 316 U.S. 681, 62 S.Ct. 1268, 86 L.Ed. 1754, we said at page 153:

> "It is well settled that the order of the reception of evidence lies largely in the discretion of the trial judge, whose action will not be reversed on appeal unless it amounts to a gross abuse of discretion. (citing cases). Abuse of discretion in such regard arises only where the order of proof permitted by the trial judge is harmful or prejudicial."

We further held in *Montgomery* that the complaining defendant bears the burden of showing prejudice resulting from the order of proof.

Citing *Montgomery*, we applied the principles stated in United States v. Alaimo, 297 F.2d 604, 607 (1961), cert. den. 369 U.S. 817, 82 S.Ct. 829, 7 L.Ed. 2d 784 (1962), and United States v. Maggio, 126 F.2d 155, 158 (1942), cert. den. 316 U.S. 686, 62 S.Ct. 1275, 86 L.Ed. 1758.

The Court of Appeals for the Second Circuit, cited and applied *Montgomery*, in United States v. Lee Wan Nam, 274 F.2d 863 (1960), cert. den. 363 U.S. 803, 80 S.Ct. 1236, 4 L.Ed.2d 1147. In holding that the trial court had not erred in permitting the Government to introduce evidence during rebuttal, which it had inadvertently failed to earlier offer, the Court said (p. 865):

> "*These trial situations must be dealt with in each case as they occur in the posture of that particular case, and we find no abuse of discretion here.*" (emphasis supplied).

The trial court's ruling in the instant case cannot be said to be unduly restrictive or in abrogation of the relator's due process rights.

We do not reach, since we are not required to do so here, the question whether the due process provisions of the federal Constitution endow a defendant with the right to inspect a police report of the type and character here involved.

We are faced only with the question whether, in view of the broad scope of the trial judge's discretion in controlling the course of the trial, and the " 'appropriately limited review of appellate courts' ", United States v. Augenblick, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537, decided January 14, 1969; Palermo v. United States, 360 U.S. 343, 353, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959), the action of the trial judge in denying the defendant *Immediate* access to the report as soon as its existence was indicated was so unreasonable and prejudicial in the setting as to deny the defendant his constitutional rights to due process and to cross-examine witnesses. To ask the question is to answer it in the negative. Moreover, the relator did not object to the ruling of the trial judge, and thereafter made no attempt to obtain the police report or even to discover if it in fact contained matter useful to the defense. We note again that the state prosecuting attorney did not challenge the relator's right to inspect the report. Nor were the discrepancies between the police report and the testimony of the prosecution witnesses of such a nature that the failure of the prosecution to give the report to the defense was *per se* a denial of due process regardless of other circumstances.

In accordance with what has been said, the judgment of this Court reversing the Order of the District Court denying the petition for writ of habeas corpus, entered pursuant to the panel's Opinion filed July 11, 1968, will be vacated, and the stated Order of the District Court will be affirmed.

We desire to note our appreciation of the indefatigable and commendable representation of the relator on this appeal by his court-appointed counsel, David Rudovsky, Esq.

BIGGS, Circuit Judge (dissenting).

It is my desire to bring certain facts in this case sharply into focus. At the trial, during the cross-examination of Rubin Selikson, Felton's counsel, an assistant public defender, brought out the fact that Rubin Selikson had made an oral state-

ment to the police which was contained in a police "Investigation Report". This report contains a summary of statements very relevant to Felton's identification as the robber by Tyrone Moore, Rubin Selikson's employee, made by Moore to Detective Herman Finkelstein—statements which were substantially different from Moore's testimony at the trial as appears hereinafter. Felton's counsel immediately requested the court to make the report "available" to Felton. The court refused this request.[1] Such a request fulfills the requirement of Commonwealth procedures. Henry v. Mississippi, 379 U.S. 443, 447–448, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965), Commonwealth v. Vivian, 426 Pa. 192, 196, 231 A.2d 301, 303 (1967).[2]

The majority seems to take the position that there must be more than one request for examination of a pertinent document; in fact, that the accused must go on knocking at the door until the trial judge sees fit in his own good time to open it. In my opinion one request is enough, for a constitutional right is neither aided nor injured by constant reassertion or reiteration. The majority seemingly asserts the position that an accused must find an exact combination of words and keep repeating them at artful times in order to maintain a constitutional right. I cannot agree with such a view. It seems to turn a criminal trial into a game of skill, one in which the accused must vie with the trial judge to attain an adequate *locus standi* and the trial judge can balk him at his whim. Nor do I deem it necessary that Felton must cause the report to be introduced into evidence in some fashion before he can have the advantage of the information contained thereon. Felton asserts that he was denied due process because of the trial court's refusal to honor his original request that the report be made available to him. I agree with his position.

Moore's testimony at Felton's trial, in pertinent part, was as follows: "Q. Now, had you ever seen this man, David Felton around the store prior to this date?

"A. Yes, I have.

"Q. You had?

"A. Yes.

"Q. On how many occasions?

"A. I guess about once or twice.

"Q. Had you known him?

"A. Not personally, no. Just by seeing him, that's all."

Upon cross-examination: "Q. Did you, at the time that these men came in the store, recognize any one of them?

"A. Well, they just looked like people I have seen around the neighborhood, that's all.

\* \* \* \* \* \*

"Q. But once you saw them entering the store, you couldn't base your identifi-

---

1. The Commonwealth's attorney insists that there was no "formal statement". If the Police Report is an informal one it is a formidable informality. We have before us only a carbon copy, but I deem its contents to be sufficiently clear. It is headed "INVESTIGATION REPORT, PHILADELPHIA POLICE DEPARTMENT" and has the subheading "INTERVIEWS AND INTERROGATIONS". It consists of three typewritten single space pages and it is signed by Detective Finkelstein at the bottom of each page. The report is dated 1/30/65; the robbery occurred on 1/29/65 at 8:05 p. m. It does not appear at what time on Saturday, 1/30/65, the report was typed and signed by Finkelstein. It is agreed that the report is on Police Department Form 49. At the argument on rehearing en banc counsel for the Commonwealth stipulated that the report was not before the Pennsylvania trial court and that it was not contained in the record in the court below. The Commonwealth offered to this court and we have presently before us a carbon copy of the original Form 49 report with Detective Finkelstein's signature on the bottom of each page.

2. The trial court refused to make the report available to the defense apparently on the ground that it had not been signed by Rubin Selikson.

Felton's counsel did not take any exception to the failure of the court to grant his request to examine the report but in view of Rule 100(a), "Exceptions", Pennsylvania Rules of Criminal Procedure, 19 Appendix P.S., the taking of an exception was unnecessary.

cation on that? Is that a fair thing to say?

"A. I could say that I knew David Felton from seeing him around the neighborhood, just seeing him around there.

"Q. Did you recognize him when he came into the store?

"A. Yes.

"Q. You did?

"A. Yes."

Unlike his testimony at trial, the statement attributed to Moore in the report was as follows: "[Moore] stated that he had seen 3 strange men standing across the street earlier and knew that they were not from the neighborhood." [3]

The usefulness of the contents of the report as a basis for cross-examination of Moore on the issue of the identity of the robber can scarcely be doubted. The information contained in the report could have been of value for other cogent purposes; for example, to open up other lines of inquiry to Felton's counsel. I therefore base this dissent primarily on Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), in which the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment * * *." I think the word "evidence" in the foregoing quotation was not intended by Mr. Justice Douglas to have other than an expansive meaning and would include the report. Whether or not Felton would have attempted to put the report in evidence or would do so at a new trial presents a question of trial tactics and would have to be resolved by competent counsel

after scrutiny of the document and careful consideration of its potentialities for advantage or disadvantage to his client for ours is an adversary system. Felton's counsel might well have contented himself by using his knowledge of the contents of the report to inform his cross-examination of Moore.

Therefore there is presently no need to speculate on this question for surely material relating so directly to the guilt or innocence of an accused should not be suppressed or withheld from the scrutiny of counsel. *Brady* holds that the suppressed material is to be made available to the accused "upon request". *Ibid.* Excerpts from the majority opinion reveal that Felton satisfied this requirement.[4] That the Supreme Court has perceived the need for scrutiny by an accused's counsel is shown by Giles v. Maryland, 386 U.S. 66, 74, 87 S.Ct. 793, 17 L. Ed.2d 737 (1967) and Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

In this connection the majority opinion seemingly relies on United States v. Augenblick, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969), as sustaining " 'the appropriately limited review of appellate courts.' " But I am of the view that *Augenblick* was intended to describe the reach of the Jencks Act and not to limit the applicability of Brady v. Maryland, *supra.* I think the Supreme Court left open the issue which might be tendered in some cases as to whether a denial of pertinent material to an accused under the Jencks Act would fall within the interdiction of the Sixth Amendment. In *Augenblick* Mr. Justice Douglas stated: "Indeed our *Jencks* [Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103]

3. The constitutional issue asserted by Felton is sufficiently brought before this court by the statement attributed to Moore in the report. There are other inconsistencies between the evidence of other Commonwealth witnesses and those attributed to them in the report. I deem it unnecessary to lengthen this opinion by referring to them.

4. The majority opinion states: "Q. [By Mr. Hogan, Felton's counsel] Now, sir,

have you at a later time made a statement to detectives about this case?

"A. [Mr. Rubin Selikson] Yes.

"Q. Was this taken down in writing in your presence by the detectives? [Detective Herman Finkelstein]

"A. They took it down in writing.

"Mr. Hogan: If your Honor please, may I *respectfully request* that this statement be made available to the defense?" (Emphasis added.)

decision and the Jencks Act were not cast in constitutional terms, Palermo v. United States * * *. [360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959)] at 345, 362, 79 S.Ct. at 1229." Mr. Justice Douglas went on to say that the *Jencks* decision and the Jencks Act "state rules of evidence governing trials before federal tribunals; and we have never extended their principles to state criminal trials. It may be that in some situations, denial of a Jencks Act type of a statement might be a denial of a Sixth Amendment right." It seems to me that the case at bar presents a situation similar to that referred to in the last quotations. I conclude that Felton has been denied a constitutional right.

Accordingly, I must respectfully dissent. I would reverse the judgment and would direct the court below to grant habeas corpus conditioned, however, upon the Commonwealth granting Felton a new trial within a reasonable period of time, a trial in which the report would be made available to him.

SEITZ, Circuit Judge (dissenting).

I concur generally in Judge Biggs' dissent but I desire to emphasize an aspect of the case which I consider of importance. Judge Biggs notes in footnote 2 and I agree that the "trial court refused to make the report available to the defense apparently on the ground that it had not been signed by Rubin Selikson." The apparent basis for the denial of access to the statement—that it was not signed—makes it clear and defense counsel was entitled to assume that the critical report would not be made available at some later point in the trial. The right of the defense counsel to examine the detective later with regard to the report or recall Selikson was no substitute here for the report itself.

We are not then confronted, as the majority indicates, with a question as to the trial judge's right to exercise discretion in controlling the course of a trial. Rather, in view of the ground of the ruling we have a case of an absolute refusal to permit an examination of a critical report given by the important witness being examined.

BIGGS, Circuit Judge, concurs in this opinion.