UNITED STATES of America ex rel.
John MOORE

v.

Eugene A. POWELL, Superintendent.

Civ. A. No. 71–992.

United States District Court,
E. D. Pennsylvania.

Jan. 19, 1972.

David Rudovsky, Philadelphia, Pa., for plaintiff.

James Crawford, Asst. Dist. Atty., Philadelphia, Pa., for defendant.

OPINION AND ORDER

MASTERSON, District Judge.

Relator, John Moore, has filed a petition for writ of habeas corpus. Relator was charged with possession of narcotic drugs and aggravated assault and battery as of July Sessions, 1968, Nos. 674–5, in Philadelphia. He was tried before a jury and found guilty of simple assault. On October 8, 1969 he

was sentenced to one to two years imprisonment.[1]

The petition raises a narrow question, but one which raises important constitutional considerations having an impact in the day to day criminal trials in the Philadelphia Court of Common Pleas. The sole issue we must decide is whether relator's specific request to inspect a police detective's report summarizing the statement taken from a key Commonwealth witness who had already testified at his trial should have been granted.

The relator relies on Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L. Ed.2d 215 (1963), in arguing that his conviction cannot stand where the prosecutor failed to disclose material under his control "which was potentially helpful to the defense." Relator takes the position that he is entitled to inspect the police detective's report upon request, no prior determination of "favorableness to the defendant" being made. The Commonwealth takes the position that its duty to disclose information in its files is limited to that which is favorable to the defendant, and it is solely in the prosecutor's discretion to make that determination.

In United States ex rel. Felton v. Rundle, 410 F.2d 1300 (3rd Cir. 1969), this same issue was presented to our Court of Appeals. Initially, a panel reversed the District Court's denial of the petition for a writ of habeas corpus and remanded with directions to grant it. In its Opinion the panel stated that "The only substantial issue before this court is whether due process requires that a state prosecutor permit a defendant upon request during trial to inspect a police report containing a detective's written narration of a witness' oral statements." 410 F.2d at 1301. However, the Court later granted the Commonwealth's petition for a rehearing en banc. After argument the Opinion of the Court was that the important due process question could not be decided because counsel had effectively waived whatever right the defendant might have had to inspect the police report by not objecting to the trial judge's ruling when the statement was first mentioned, and "at no other point during the trial did the relator's counsel make any request to inspect the police report." 410 F.2d at 1302. Further, "the state prosecuting attorney did not challenge the relator's right to inspect the report." 410 F.2d at 1304.

We hold that relator in the present case has effectively raised and preserved the constitutional issue. Unlike *Felton*, trial counsel emphatically stated that he had a right to read the police report at that stage of the proceedings, the Assistant District Attorney opposed the request, the trial court heard argument at side bar and denied the request, and defense counsel made a second request to inspect the report after learning that the witness had looked at it two days before testifying (N.T. 38–44). The trial court then denied the request to inspect after hearing the prosecutor's objection. (N.T. 45). Therefore, we are not persuaded by the Commonwealth's argument that the present case is controlled by the narrow procedural holding of *Felton*.

Since we are asked to decide whether relator was denied due process by the denial of his request to inspect the police report, we have examined the actual report in question. Interestingly, both sides argued that our inspection of the report was unnecessary to decide the constitutional issue. We do not agree.

The Commonwealth takes the position that the contents of the report are not favorable or helpful to the defendant, and, therefore, *Brady* does not require disclosure. We cannot agree, however, that *Brady* contemplated that the determination of favorableness would be left in the unreviewable discretion of the

---

1. Although it appears that relator may have served the full terms of the sentence he is attacking, the petition was filed before the expiration of the sentence, and, therefore, we must retain jurisdiction. Carafas v. La Vallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968).

prosecutor. *Brady* makes it clear that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, *irrespective of the good faith or bad faith of the prosecution.*" 373 U.S. at 87, 83 S.Ct. at 1196, 1197 (emphasis added). Clearly, the Court contemplated due process violations by failure to disclose evidence which the prosecutor believes in good faith is not favorable to the accused.

On the other hand, we find no authority for relator's position that he was entitled to inspect the report upon request to determine whether it contained anything favorable. Clearly, this broad disclosure would render the favorableness qualification of *Brady* meaningless. As one would expect, the reviewing courts have uniformly given careful scrutiny to the evidence requested by and denied access to the defendant in light of the testimony at trial to determine whether its suppression was a denial of due process.

The analysis of the Court of Appeals in *Felton* is consistent with this type of inquiry. In addition to the procedural issue described above the majority opinion points out:

> "Nor were the discrepancies between the police report and the testimony of the prosecution of such a nature that the failure of the prosecution to give the report to the defense was *per se* a denial of due process regardless of other circumstances." 410 F.2d at 1304.

On the other hand, Judges Biggs and Seitz dissented on the ground that the summary of the witness' statement in the police report was "substantially different" from the witness' testimony at the trial, and, therefore, "the usefulness of the contents of the report as a basis for cross-examination of Moore on the issue of the identity of the robber can scarcely be doubted." 410 F.2d at 1306.

■ After carefully examining the police reports in question and the notes of testimony, we have concluded that there is not the slightest amount of information which can be said to be favorable or helpful to the defendant. The testimony can be briefly summarized as follows: On June 11, 1968, police officer John W. Taylor was directed to 1704 West Master Street at approximately 4:45 A.M. (N.T. 17). Upon arriving at that address, he observed an unidentified Negro female lying on the pavement, and a broken window directly above her (N.T. 18). He also observed relator standing in the doorway with a lug wrench in his hand (N.T. 18). As he got out of the police car, the defendant backed into the building and Officer Taylor heard a metal object drop to the ground (N.T. 20). He then apprehended the defendant and placed him in the police car. Another woman was found in the vestibule, cut and bleeding, and she and the woman on the pavement were taken to the hospital (N.T. 20). The lug wrench and six packets of heroin were found in the vestibule. (N.T. 21.)

Detective Ronald Sharper then described investigations he conducted concerning the apartment and the position of the glass (N.T. 51-2). At police headquarters relator was warned of his rights and said that he did not wish to make a statement. He then volunteered the statement that he did not throw the girl out of the window, she jumped out. He had visited her to share some heroin, but she tried to steal some from him. He was beating her to get the heroin back. (N.T. 60-61.)

The defendant was acquitted of possession of narcotics and of one count of assault and battery. He was convicted on the other count of assault and battery.

The police reports in question here are two Form 74-49 reports filled out by investigators of the Philadelphia Police Department. The first was filled out by Officer Danny Palermo on June 11, 1968. The entire summary of prosecut-

ing witness John Taylor's statement appears as follows:

"b. *Pol. John Taylor*: Inside Narcotic HQ on 6–11–68 at 8:45 A.M. and he related the following. On Tuesday 6–11–68 at about 4:45 AM received a call of 'Hosp Case' at 1704 W. Master St. Upon arrival observed one *Willie Terrell* 29N/F res. 421 Queen St. lying on sidewalk, below broken window, bleeding severely. In the doorway I observed John Moore 33N/M res. 3162 Gordon St. standing with a lug wrench in his hand, and by his right foot on floor, I found six (6) glazed bags containing white powder. He was placed under arrest, and placed in RPC #23–B.

c. Behind *John Moore* in hallway I observed one *Ester Robinson* 36N/F res 1704 W. Master St. who also was bleeding from the right hand, and when assisting her I observed in kitchen on table one (1) glazed bag with white power, one (1) burnt bottle cap with cotton wad, and two (2) glassdroppers with needles and black rubber bulbs attached."

The second Form 74–49 was filled out by Officer Sharper on June 14, 1968. The entire summary of Officer Taylor's statement appears as follows:

"1. On Tue. 6/11/68 4:45 AM, he was directed to 1704 W. Master St. by Police Radio because of a hospital case. Upon arriving, he observed Willie Terrell 29N/F laying on the sidewalk in front of 1704 W. Master St. bleeding. There was broken glass on the ground also and the window of 1704 W. Master St, 1st floor front was broken.

2. In the doorway of 1704 W. Master St, John Moore 34 NM was standing with a lug wrench in his hand. Behind him was Esther Robinson 46 NM and she was also bleeding.

3. After the two ladies were taken to the St. Joseph's for treatment, a further investigation of the house turned up six bags of a white powder believed to be HEROIN.

4. JOHN MOORE was then taken into NCDD for investigation."

We find no contradictions between the details related in the police reports and the testimony of the officer which could have been prejudicial to relator. The only ambiguity which could possibly have given relator's counsel subject matter for cross-examination seems to be the circumstances in which the narcotics were found, but since the jury acquitted relator on the narcotics charge, no prejudice could have resulted. As to his single conviction for assault and battery, the reports contain nothing favorable to relator. It is important to note that the details of the oral statement relator gave to Detective Sharper concerning the assault and battery are related in the police report exactly as Detective Sharper described in his testimony:

"MOORE, after being warned and refused to make a statement, stated to the assigned that he did not throw the complainant out the window. She jumped out. Also, MOORE stated he was made out of a fool by the women because they stole his dope. He added that because ROBINSON was a friend of his he took his dope by her house to turn her on and they stole it from him. That is why he beat them up." 4/15/68, Report, page 2.

Because neither *Felton* nor this case, as we view it, can resolve the broad constitutional questions which have been argued to us, we can expect similar litigation in the future. We think it appropriate to point out, however, that since *Brady* requires judicial scrutiny of prosecution evidence requested by the defendant, it would be far more sensible for the state trial judge to review the "favorableness" of the evidence *when requested* than to await the scrutiny of a federal judge upon collateral attack.

We recognize that there is some merit to relator's argument that a defendant is entitled to inspect a report summarizing a prosecution witness' statement without a prior determination of favorableness. Apart from the constitutional considera-

tions, we would prefer a liberal practice of disclosure of a witness' prior statements to police officers without prior judicial review. Whereas the *Brady* requirement of favorableness seems to focus on searching for inconsistencies between the witness' statement and in-court testimony, it is clear that the report could reveal additional material evidence which is not inconsistent with the officer's testimony. We believe that defense counsel is often in a better position than the Court to determine what evidence falls into this category.

However, we hold that even if there is such a broad right of disclosure, the failure to make such disclosure could not have prejudiced relator since such error was clearly harmless. Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Coleman v. Maxwell, 273 F.Supp. 275 (S.D. Ohio 1967). The reports contain no inconsistencies with the prosecution witness' testimony nor any additional evidence. Therefore, relator's petition for a writ of habeas corpus will be denied with prejudice.