**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Leslie S. KAPLAN, Defendant-Appellant.**

**No. 18863.**

United States Court of Appeals, Seventh Circuit.

Argued May 18, 1972.

Decided Sept. 8, 1972.

Certiorari Denied March 5, 1973.

See 93 S.Ct. 1443.

Charles A. Bellows, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., Chicago, Ill., John Peter Lulinski, Arnold Kantner, Jeffrey Cole, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, PELL, Circuit Judge, and GORDON, District Judge.*

SWYGERT, Chief Judge.

The defendant, Doctor Leslie S. Kaplan, appeals from his conviction of five counts of mail fraud (18 U.S.C. § 1341) and one count of conspiracy (18 U.S.C. §

* District Judge Myron L. Gordon of the Eastern District of Wisconsin is sitting by designation.

371). The convictions stemmed from a scheme to defraud several insurance companies in which Kaplan and ten other defendants allegedly participated. The scheme including planning "fake automobile and pedestrian accidents," recruiting participants in the fake accidents and additional participants in legitimate accidents, arranging that lawyers be retained to prosecute the claims against the insurance companies, requiring that all participants visit the offices of Kaplan and, causing fraudulent medical reports to be prepared and sent to the insurance companies. Kaplan's trial, which was severed from that of his co-defendants, resulted in convictions on all counts in which he was named. He was sentenced to the custody of the Attorney General for concurrent sentences of three years on each count and fined a total of $15,000. In this appeal, four issues are raised: that the prosecution failed to disclose that a fact, critical for impeachment purposes, was misrepresented by one of its witnesses, that the trial judge erred in refusing to order a bill of particulars, that the prosecution's cross-examinations of a defense character witness and of the defendant were improper, and that the evidence was insufficient to sustain a conviction on all counts.

We find the first claim—that the Government failed to disclose a crucial misrepresentation made by one of its witnesses—the most substantial. The testimony of Jesse Ward was used to establish Kaplan's participation in the set of incidents on which Count Twelve was based. Ward, himself a defendant in this case, was at the time of the trial incarcerated in Sandstone Penitentiary for conviction of counterfeiting. On cross-examination, Ward was repeatedly asked if he had been promised anything in re-turn for his testimony. On one occasion he said that Howard Hoffman, an Assistant United States Attorney assigned to this case, "never, never, never" told him that he would remind the court that Ward had been a Government witness when he came up for sentencing in the mail fraud case. On another occasion, he denied ever having spoken with Hoffman or any other prosecutor saying, "I don't want to talk to Mr. Potter or Mr. Hoffman, none of them. . . . I don't want to see them people. . . . They're the ones that got me behind them [the prison bars]. Why should I want to come talk to him? I just want to admit my crime and go back to the street to my friends." Finally, the prosecutor pointedly asked on redirect: "Mr. Ward, at any of the few times that you and I have talked together, did I or Mr. Sprague or Mr. Potter ever make any promise of any kind to you regarding anything?" Ward then reiterated: "You people keep asking me that. I told you ain't nobody never offered me nothing, and I would like to say you made no offers, you never told me you could do anything for me. The only thing you ever told me, did I want to tell you anything about the case, and whatever I said could be used against me. . . . "

After Kaplan was convicted, a letter written by Ward to his court-appointed attorney came to the attention of Kaplan's attorney. In the letter, Ward alluded to promises he had received in exchange for his cooperation and complained that they had not been fulfilled because the United States Attorney had not "personally" written a letter to the Parole Board "recommending that I be given a parole at the earliest parolable date." Defense counsel immediately moved for a new trial on the grounds of newly discovered evidence.[1]

1. The letter stated in pertinent part:

Dear Mr. Schiller:

\*     \*     \*     \*     \*

Now I should like to bring this to your attention. During your conversations with the U. S. Attorney in discussing my case, while in both our presence, the U. S. Attorney stated, that if I cooperated, which I did, and enter a plea of guilty, which I did, that he the U. S. Attorney would personally write a letter to the parole board recommending that I be given a parole at the earliest parolable date. It is very apparent that this was not done.

At a subsequent hearing, the Government revealed a letter written by the United States Attorney to the Parole Board immediately following the conclusion of the Kaplan trial. The United States Attorney reminded the Parole Board that Ward, after having been "quite reluctant to be a government's witness due to the code of the street," later "courageously agreed to do so," and urged the Board to "consider this fact favorably to Mr. Ward in considering his application for parole, as well as the fact that his testimony was of great help to the government's case."[2] The hearing established that Ward had been reluctant to testify, that he had tried to elicit an agreement to secure his release on parole in the counterfeiting case or to influence his prospective sentencing in the mail fraud case, and that finally, at one meeting in Assistant United States Attorney Sprague's office, Sprague accepted Ward's request to write a letter to the Parole Board "to the effect that Jessie Ward, in fact, did cooperate with the Government and would appreciate any consideration that the Parole Board would give to Jessie Ward because of his cooperation." The district court found that there had been a "misstatement" in Ward's testimony, but held that it had not affected the outcome of the case. The court consequently denied the motion for a new trial.

The Government states that Ward had not received "any consideration," that "no promise" was made to Ward for his testimony. We find the Government's argument an exercise in sophistry. It suggests that Ward was not promised anything in exchange for his testimony simply because he had been disappointed in his initial requests; in the Government's calculation, receiving less than he had asked for as a result of these meetings amounts to receiving nothing.

Ward was a three time felon. He had been previously convicted of a Dyer Act violation in July 1959; he was then serving time for counterfeiting, and had pled guilty to one count of mail fraud and conspiracy in the instant case. A letter written by the United States Attorney pointing out what "great help" he had been to the Government's case was no unimportant gesture. Though Ward had wanted more assurances from the Government—in effect a guarantee that he would be released—this promise was sufficient to finally prod him into testifying. His statements denying ever having met with any prosecutor on these subjects were undeniably fallacious. The statement, "nobody never offered me nothing," is a misrepresentation, if not an overt perjury.

The scope of our review is ordinarily limited when the issue before us is couched in a motion for a new trial

And it was your responsibility as my attorney, and an officer of the Court to see that he kept his promise. * * * And I expect you to see the U. S. Attorney and bring this to his attention, because if one cannot take the word of a gentleman, and man of honor and integrity, then one can believe in nothing.

2. The letter read as follows:
Dear Sir:
Re: Parole Application of Jesse Ward
   This is to advise you that Jesse Ward recently testified for the government in the successful mail fraud prosecution of Dr. Leslie S. Kaplan, 68 CR 523.
   While Jesse Ward was at first quite reluctant to be a government's witness

due to the code of the street, he later courageously agreed to do so.
   As you know, he was also a co-defendant in the above mail fraud case and pleaded guilty to the charge. After he testified against Dr. Kaplan, he was then sentenced to six months by Judge Robson to run concurrent with his present counterfeiting sentence. Undoubtedly Judge Robson gave him a light concurrent sentence because of his testimony in the Kaplan case.
   We would ask you to consider this fact favorably to Mr. Ward in considering his application for parole, as well as the fact that his testimony was of great help to the government's case.
   Thank you for your consideration in this matter.

based on newly discovered evidence. United States v. Johnson, 327 U.S. 106, 111–112, 66 S.Ct. 464, 90 L.Ed. 562 (1946). However, an exception has been carved out when the new evidence suggests that material facts known to the prosecutor during the pendency of the trial have not been disclosed to the defense. This is especially so when the prosecutor is charged with knowingly using perjured testimony, Alcorta v. Texas, 355 U.S. 28, 31, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957), Pyle v. Kansas, 317 U.S. 213, 216, 63 S.Ct. 177, 87 L.Ed. 214 (1942), Mooney v. Holonhan, 294 U.S. 103, 112, 55 S.Ct. 340, 79 L.Ed. 791 (1935), or with failing to correct testimony when it became apparent that it was false, Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

In *Napue,* the principal state witness, in response to a question from the Assistant State's Attorney, stated that he had received no promise of consideration in return for his testimony. The Assistant State's Attorney allowed this statement to come before the jury uncontradicted. After the trial, defendant's counsel discovered that the Assistant State's Attorney had promised that "a recommendation for a reduction of his [the witness'] sentence would be made and, if possible, effectuated." The Court grounded its analysis in the due process clause of the Constitution and interpreted its requirements strictly. It held that where the prosecutor's responsibility to insure a fair trial is concerned there is no difference between false substantive evidence and false impeachment evidence: "The principle that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness." 360 U.S. at 269, 79 S.Ct. at 1176. In addition, it found that the consitutional infirmity was not eliminated because other impeachment evidence had been introduced against

this witness. 360 U.S. at 270, 79 S.Ct. 1173.

■ Since we have characterized Ward's testimony as false, we find that this case fits squarely within the rule of *Napue.* We reject the Government's claim that additional impeachment evidence introduced against Ward, in particular, evidence of his prior convictions, served to eliminate the constitutional error. Moreover, given the strict standards advanced for reviewing prosecutorial misconduct of this type, we find that since Ward's testimony may have affected Kaplan's conviction on Count Twelve, a new trial of that charge is required.

The defendant also urges that this court find his conviction under all counts "tainted" by Ward's testimony. Upon careful review of the evidence, we have found otherwise. Each substantive count of the indictment described a separate falsified accident and the mailings employed in connection with it. Ward's testimony figured prominently in the accident with which Count Twelve was concerned. Testimony from alleged "victims" of the accidents, from the lawyers retained by the victims, and from other participants in the schemes, in addition to documentary evidence consisting of Kaplan's records of patients' visits and medical reports readily sustain his conviction under the remaining substantive counts. The conspiracy count can be sustained on the basis of this evidence in addition to the very damaging testimony of Kaplan's secretary, Addie Frundt, and a codefendant, one of the lawyers in the scheme, William Kaper.

■ The defendant charges error in the court's failure to grant him a bill of particulars. The Government responds with the oft-quoted rule, that the motion for a bill of particulars is "addressed to the sound discretion of the [trial] court." Wong Tai v. United States, 273 U.S. 77, 82, 47 S.Ct. 300, 302, 71 L.Ed. 545 (1927). We think it important that this rule not serve as a shield to all appellate review of bill of particulars' claims. Though the scope of our review is limit-

ed to a finding of an abuse of discretion, that exercise is an important one. The standards for review derive from the two functions of a bill of particulars, the "apprising" requirement of the sixth amendment, and the double jeopardy protection of the fifth amendment, 8 J. Moore, Federal Practice ¶ 7.06[1], at 7–32 (1972). Only the former is claimed to be unsatisfied in the instant case.

The information requested by the defense counsel was undeniably important to the preparation of the defense. The crucial question, however, is whether it was necessary that the Government supply that information. We must consider whether the defense could have obtained the information through an ordinary investigation or whether the costs of that investigation would have been prohibitive. After careful analysis of the indictment, we find that the information requested was well within the scope of a defense counsel's usual investigation. It seems unlikely that the defense would suffer unduly as a result of this expenditure of time or money.

■ The defendant also charges error in the conduct of the trial. He claims that the trial judge erred in permitting impeachment of a defense character witness through questions dealing with a previous suspension of the defendant by the Cook County Medical Association because of defendant's treatment and billing of welfare patients. We fully understand the dangers involved in the impeachment of character witnesses and the important responsibilities of trial judges in this regard. Shimon v. United States, 122 U.S.App.D.C. 152, 352 F.2d 449 (7th Cir. 1965); see also 3 Wigmore, Evidence § 988 (3d ed. 1940). Questions which seek to challenge the scope and basis of the witness' knowledge run the risk of revealing to the jury the specific acts of misconduct performed by the defendant, evidence which would be otherwise inadmissible. This is especially so where, as in *Shimon*, the impeachment questions involved offenses similar to the one before the jury in the case at bar. However, in *Shimon*, the court suggested that the risk of impeachment could be obviated in some circumstances by permitting the witness to testify about what he has heard as to the outcome of the charges. In the instant case, we find that the prejudicial effect of the Government's cross-examination was neutralized by the testimony of the witness in response to the defense counsel's questions on redirect. The witness stated that Kaplan had since been reinstated by the Cook County Medical Association. Shimon v. United States, *supra* at 454.[3]

3.  The defendant also argues that cautionary instructions are mandatory in cases of this kind. Basing his argument on United States v. Phillips, 217 F.2d 435 (7th Cir. 1955), the defendant claims that failure to provide these instructions amounts to plain error and warrants reversal of the case. However, the facts of *Phillips* are in many respects *sui generis*: The Government fired questions at the witness relating to arrests of the defendant of which the witness claimed to be ignorant. There was no basis in the record for these charges, the judge took no steps to ascertain, out of the presence of the jury, whether these questions were grounded in actual events, and no cautionary instructions were then given. The defense counsel objected and the court summarily overruled his objections. In the instant case, immediately after direct examination of the witness was concluded, the Government informed the court, out of the presence of the jury, that it intended to inquire about the recommendations of the Cook County Medical Advisory Committee suspending defendant from practice in 1955 and 1968. Counsel for defendant then moved to strike the witness' testimony. The court denied the defendant's motion but decided to limit cross-examination to the 1955 suspension since the 1968 suspension may have been prompted by the current charges. The court had taken precautionary steps and had uncovered a basis in fact for the questions. Moreover, as we have indicated above, the court permitted the witness to testify about the defendant's subsequent reinstatement. While the better practice may be to give cautionary instructions, we cannot say that under these circumstances the court's failure to do so requires reversal.

Finally, we find no merit in Kaplan's claim that the questions asked by the Government during his cross-examination justify reversal of his conviction, or that the evidence was insufficient to sustain the jury's finding. We thus affirm Kaplan's conviction on all counts with the sole exception of Count Twelve.[4]

4. Since counts under concurrent sentences are involved here, we are bound, under United States v. Tanner, 471 F.2d 128 (7th Cir. 1972), to consider whether the declaration of one count of the indictment invalid requires resentencing of the others. After considering the factors advanced in *Tanner*, we have decided that reversal of Count Twelve is sufficient.