UNITED STATES of America, Plaintiff,

v.

Alex J. RAINERI, Defendant.

No. 80–CR–29.

United States District Court,
W. D. Wisconsin.

Oct. 7, 1980.

Frank M. Tuerkheimer, U. S. Atty., Madison, Wis., for plaintiff.

Daniel W. Linehan, and Eugene Linehan, Linehan Law Office, Madison, Wis., for defendant.

CRABB, Chief Judge.

## INTRODUCTION

In the decision and order entered in this case on October 3, 1980, the court explained that defendant's pretrial motions had been divided into four units for consideration and disposition. It was the court's intent that the October 3 decision deal with the first unit of defendant's motions—those relating essentially to discovery matters, including defendant's motion for a bill of particulars. Treatment of this latter motion, however, was inadvertently omitted from the October 3 decision. Accordingly, this decision and order will address both the motion for a bill of particulars as well as the second unit of defendant's pretrial motions—the motion to compel a psychiatric examination of government witness Cira Gasbarri.

1. In this regard, the United States Attorney has represented by affidavit that he has provided defendant with all available F.B.I. reports of

## DECISION

### Bill of Particulars

The only remaining question under defendant's motion for a bill of particulars relates to Counts I, II, and III, the prostitution-related charges of the indictment. Defendant seeks an order requiring the government to provide the "exact dates" on which the defendant traveled or used a facility in interstate commerce and on which the defendant performed acts promoting and facilitating an unlawful activity, as alleged in Counts I, II, and III.

Defendant argues that the requested particulars are essential to the preparation of his defense and to his protection against future jeopardy. In opposing the motion, the government argues that a bill of particulars may not properly be used to force disclosure of such detailed evidentiary matter, that "exact dates" cannot easily be fixed, that the requested particulars would impose undue constraints upon the government's proof at trial, and that a bill is unnecessary in light of the substantial discovery already provided to defendant.[1]

A primary function of a bill of particulars is to sufficiently apprise a defendant of the essential facts of the offenses charged so that the defendant is able to prepare a defense and avoid surprise at trial. *United States v. Kaplan*, 470 F.2d 100 (7th Cir. 1972), cert. denied, 410 U.S. 966, 93 S.Ct. 1443, 35 L.Ed.2d 701 (1973). The rationale for restricting the use of the bill is to protect the government from forced disclosure of its evidence and its theory of the case, and to avoid "freezing" the government's case as a result of the rule that evidence at trial must conform to the bill of particulars. 8 *Moore's Federal Practice* § 7.06[1], at 7–49—7–50 (2d ed. 1980).

Though dates of alleged illegal acts may properly be the subject of a bill of particulars, it appears likely that the provision of such particulars in this case would

every witness the government intends to call in its case-in-chief to testify as to direct dealings with the defendant.

impose a severe burden upon the government by unduly restricting its evidence at trial. Moreover, defendant's need for the specific information appears minimal at best in view of the evidentiary detail already disclosed by the government.[2] I am satisfied that defendant's legitimate interests in preparing his defense, avoiding surprise, and protecting against exposure to further jeopardy have been satisfied in this case. Binding particularization ought not be required under these circumstances. Defendant's motion for a bill of particulars is denied.

### Psychiatric Examination of Government Witness Cira Gasbarri

Four of the five counts in this case are directly concerned with the relationship between the defendant and Cira Gasbarri. The first three counts allege defendant's involvement in prostitution-related activities at the Show Bar in Hurley, Wisconsin, an establishment operated by Ms. Gasbarri. The fourth count alleges that defendant committed perjury before the Grand Jury when he denied having traveled with Gasbarri to Reno, Nevada, during a three-week period in September and October, 1978. In an affidavit submitted to the court in opposition to defendant's pretrial motions, the United States Attorney has revealed that Ms. Gasbarri provided the Grand Jury with substantial testimony relevant to these first four counts of the indictment. The government doubtless intends that Ms. Gasbarri play an equally important testimonial role at trial. This is the context in which defendant has moved for an order compelling Ms. Gasbarri to undergo a mental examination.

Defendant's motion, as it was originally presented and argued, sought an order compelling Ms. Gasbarri to undergo examination by a psychiatrist in order to determine her competency during the times material to the indictment and at the time of her testimony before the Grand Jury. Defendant furthermore requested that an evidentiary hearing be conducted on his motion at which he might introduce testimony showing that Ms. Gasbarri's mental condition at these times "was not sufficient to lend credibility to her testimony." [3]

In his original supporting brief, defendant explained that the purpose of the court-ordered examination would be to provide an effective basis for challenging Ms. Gasbarri's credibility at trial.

During the course of briefing on his motion, however, defendant altered the avowed purpose of his motion by raising the additional argument that Gasbarri's mental condition "is also a matter which relates to her competence to testify in general." As it is now presented, it appears that the requested competence inquiry has three purposes:

—to determine whether Gasbarri was a competent witness at the time of her testimony to the Grand Jury;

—to determine whether she is competent to testify at trial; and

**2.** Defendant has all but conceded as much. In his Reply Memorandum, at p. 52, he stated his previous understanding (one not shared by the government) that the government would provide the exact dates, "to the extent that they have not already been provided in the materials given to the defense."

**3.** In an affidavit submitted along with the motion, defense counsel stated that he would introduce testimony at the evidentiary hearing from Ms. Gasbarri's co-workers and employees showing "various behavior patterns of Ms. Cira Gasbarri which are normally indicative of mental disorder." In a later affidavit defense counsel stated that he had been informed that Ms. Gasbarri had engaged in the following types of behavior during late 1978 and early 1979:

a. Writing unusual statements on her garage door in lipstick or a similar substance, including "kill Cira".

b. Alleging that her conduct was being monitored through the electronic media by various agencies.

c. Alleging that her conduct was being monitored through electrical outlets and in other fashions by various agencies.

d. Engaging in the excessive use of alcohol and drugs.

e. Suffering from delusions regarding the burning of the Show Bar.

[Defendant's] Affidavit in Support of Reply Memorandum, at 1. The affidavit does not identify the source of this information.

—to provide a basis for impeaching her credibility at trial.

At the same time as he raised the additional question of Gasbarri's competence to testify at trial, defendant also altered the statement of relief sought by his motion. As explained in his reply brief, at 6c–6d, defendant now seeks a pretrial inquiry into Gasbarri's testimonial competence under Rule 104(a), Federal Rules of Evidence,[4] or, *alternatively*, an order requiring her to undergo psychiatric examination.

Defendant's argument in support of his now alternative motion is summarized in the following passage from his reply brief, at 6a:

> The defendant believes that there must be some procedure adopted in this action to determine whether or not Cira Gasbarri was and will be a competent witness and to further determine the length to which her credibility can and should be impeached, based upon her mental condition at the relevant times.

The government argues in opposition that Gasbarri's competence at the time of her testimony before the Grand Jury is legally immaterial, that any question as to her present testimonial competence is satisfied by the provisions of Rule 601, Federal Rules of Evidence,[5] and that a psychiatric examination of Gasbarri is not needed to provide defendant with grounds for seeking to impeach her credibility at trial, because of the facts defendant already possesses as to her mental condition.

This lengthy review of defendant's description of his motion and of the parties' arguments was necessary in order to clearly define the issues raised for decision. As I view the present controversy arising from defendant's alternative motion, there are two issues to be decided:

1) whether an evidentiary inquiry should be made at this time under the authority of Rule 104(a), Federal Rules of Evidence, to determine whether Ms. Gasbarri was competent to testify before the Grand Jury and whether she will be competent to testify at the upcoming trial in this case; and

2) as an alternative, whether the court should order Ms. Gasbarri to undergo a psychiatric examination that may provide evidence on the question of her testimonial competence, past and future, and that may also provide defendant with a basis for attacking Ms. Gasbarri's credibility at trial.

■ Ms. Gasbarri's testimonial competence at the time of her appearances before the Grand Jury is not, in my view, an appropriate subject of inquiry through either of the means requested in defendant's motion. The government properly argues that such an inquiry could at most result in a *post-hoc* determination that her testimony before the Grand Jury was neither credible nor competent, and thereby possibly provide defendant with a claim that the Grand Jury was presented with insufficient evidence to support the pertinent counts of the indictment. Such a claim would have little or no arguable merit. *See Costello v. United States*, 350 U.S. 359, 363–364, 76 S.Ct. 406, 408–409, 100 L.Ed. 397 (1956). Defendant's interest in exploring Ms. Gasbarri's mental condition at the time of her testimony before the Grand Jury provides no support for his alternative motion.

■ The present testimonial competence of Ms. Gasbarri—or to state the matter most precisely, her competence to testify at the upcoming trial—is a legally cognizable subject. In my view, however, the appro-

---

**4.** Rule 104(a), dealing with preliminary questions affecting evidence at trial, reads as follows:

> *(a) Questions of admissibility generally.* Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.

**5.** In its pertinent part, the Rule provides as follows:

> *Rule 601.   General Rule of Competency*
> Every person is competent to be a witness except as otherwise provided in these rules. . . .

priate means of inquiry into this subject is neither a competency hearing before the magistrate at this time nor a court-ordered psychiatric examination of the witness, but instead a preliminary competency hearing, or voir dire examination of the witness, to be conducted by the trial judge at the time of trial under Rule 104, Federal Rules of Evidence.

The government correctly argues that Rule 601 of the Rules of Evidence essentially creates a presumption of every witness' testimonial competence. The notes of the advisory committee on the proposed federal evidence rules also make clear that standards of mental capacity are difficult to apply and rarely result in the disqualification of a witness.[6] Court practice appears to support this conclusion. I note that defendant has failed to provide the court with a single citation to a case involving disqualification of a witness on grounds of mental incompetence, while the government has pointed to several instances of a court finding a witness competent on evidence far more suggestive of mental disorder than defendant has presented by affidavit in this case with respect to Gasbarri. *See, e. g., United States v. Harris,* 542 F.2d 1283, 1302–03 (7th Cir. 1976), *cert. denied,* 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (1977); *United States ex rel. Lemon v. Pate,* 427 F.2d 1010 (7th Cir. 1970).

What defendant desires in this case, however, is an opportunity to rebut the presumption of Ms. Gasbarri's competence. A procedure for such a challenge is provided by Rule 104 of the Federal Rules of Evidence. The necessity of holding such a hearing on the preliminary question of a witness' competency is a matter within the discretion of the trial court. *United States v. Peele,* 574 F.2d 489, 491 (9th Cir. 1978); *United States v. Gerry,* 515 F.2d 130, 137 (2d Cir. 1975). In my view, the appropriate time for such a hearing is at trial when the testimony of the challenged witness is to be offered, for the relevant question is whether the witness is presently competent to testify. Therefore, it is also my view that the appropriate decisionmaker—both on the necessity of holding a hearing, and thereafter on the competency question presented—is the trial judge. Accordingly, defendant's motion for a pretrial determination of witness Gasbarri's competence to testify at trial should be denied, but without prejudice to defendant's right to renew his request before the trial judge at the time of trial.[7]

■■ In view of my conclusion that defendant's motion for a hearing on Gasbarri's testimonial competence should be denied now, but with leave to renew the motion before the trial judge, there may be no present necessity for deciding defendant's alternative motion for a court-ordered pretrial psychiatric examination of the witness. To the extent that either the trial judge or the defendant might view such an examina-

---

6. The pertinent paragraph of the advisory committee note on Rule 601 provides as follows:

No mental or moral qualifications for testifying as a witness are specified. Standards of mental capacity have proved elusive in actual application. A leading commentator observes that few witnesses are disqualified on that ground. Weihofen, Testimonial Competence and Credibility, 34 Geo.Wash.L.Rev. 53 (1965). Discretion is regularly exercised in favor of allowing the testimony. A witness wholly without capacity is difficult to imagine. The question is one particularly suited to the jury as one of weight and credibility, subject to judicial authority to review the sufficiency of the evidence. 2 Wigmore §§ 501, 509. Standards of moral qualification in practice consist essentially of evaluating a person's truthfulness in terms of his own answers about it. Their principal utility is in affording an opportunity on voir dire examination to impress upon the witness his *moral duty. This result may, however, be* accomplished more directly, and without haggling in terms of legal standards, by the manner of administering the oath or affirmation under Rule 603.

7. The form of a competency inquiry should be left to the trial judge's discretion, and a decision of the competency issue may be deferred until the judge has not only heard the challenged witness' testimony but has had an opportunity as well to determine whether it is corroborated by the testimony of other witnesses. *United States v. Gerry,* 515 F.2d at 137. This is additional reason for reserving the Gasbarri competence issue for consideration by the trial judge.

tion as likely to produce evidence relevant and helpful to a competency inquiry at trial, the trial judge will, of course, be free to consider the request at that time. See *United States v. Haro*, 573 F.2d 661, 666–667 (10th Cir. 1978); *United States v. Callahan*, 442 F.Supp. 1213, 1221–1222 (D.Minn. 1978). A request for psychiatric examination of a prospective witness, like a request for a competency hearing, is a matter over which a trial court has broad discretion. *United States v. Jackson*, 576 F.2d 46, 48 (5th Cir. 1978); *United States v. Pacelli*, 521 F.2d 135, 140 n. 4 (2d Cir. 1975). Moreover, it should be noted that the courts that have considered both issues have regarded voir dire examination of a witness' competence as a clearly preferable alternative to court-ordered psychiatric examination. *Haro*, 573 F.2d at 666–667; *Callahan*, 442 F.Supp. at 1221–1222.

 Defendant's alternative motion for a psychiatric examination has also been asserted, however, as a means by which defendant should be allowed to seek evidence that may provide a basis for attacking Ms. Gasbarri's credibility at trial. To this extent, defendant's alternative motion is essentially a request for discovery. And to this extent, the motion should now be considered.

In deciding such a motion, it is appropriate that a court weigh the defendant's asserted need for such an examination against the witness' justifiable privacy interests and the government's legitimate concerns that such an examination might serve as a means of harassment, and thereby produce a deterrent effect upon the willingness of witnesses to come forward and offer evidence of crime. *United States v. Jackson*, 576 F.2d at 49.

I have attempted to conduct such a weighing of interests in this case, and it is my conclusion that defendant has failed to show sufficient need for the requested examination. The principal basis of my conclusion is my finding that defendant al-

ready possesses considerable information as to Ms. Gasbarri's prior mental condition,[8] and that he has failed to show or allege that the requested examination would likely produce sufficient additional and admissible evidence so as to outweigh the witness' interest in avoiding a compelled psychiatric examination. Under these circumstances, I agree with the government that the granting of defendant's alternative request would be both unnecessary and unwise. The information already possessed by defendant will likely provide a fully sufficient basis for his efforts to impeach Gasbarri's credibility at trial. See *United States v. Pacelli*, 521 F.2d at 140; *United States v. Russo*, 442 F.2d 498, 502 (2d Cir. 1971).

---

**8.** I refer here both to the information that defense counsel has received from various sources of his own (see n. 3, above) and to information on the witness' past mental condition that has been disclosed by the government.